Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JEFFREY PHILLIPS, RAFAEL PORTO, JOEL    )
MILLER, and MILES SWANSON    )
    )
        Plaintiffs,    )
    )
    -against-    )
    )
THE CITY OF NEW YORK; MICHAEL    )
BLOOMBERG, Mayor of the City of New York;    )
RAYMOND KELLY, New York City Police    )
Commissioner; STEPHEN HAMMERMAN,    )
Former Deputy Commissioner for Legal Matters,    )
New York City Police Department; DAVID    )
COHEN, Deputy Commissioner for Intelligence,    )
New York City Police Department; THOMAS    )
DOEPFNER, Assistant Deputy Commissioner for    )
Legal Matters, New York City Police Department;    )
NYPD LIEUTENANT DANIEL ALBANO; NYPD    )
DEPUTY INSPECTOR KERRY SWEET, NYPD    )
Legal Bureau Executive Officer; NYPD Legal    )
Bureau Senior Counsel RUBY MARIN-JORDAN    )
NYPD LEGAL BUREAU SUPERVISOR(S) AT    )
PIER 57; JOSEPH ESPOSITO, Chief of the New    )
York Police Department; THOMAS GRAHAM,    )
Commander, Disorder Control Unit, New York City )
Police Department; JACK MCMANUS, Assistant    )
Chief, New York City Police Department; BRUCE    )
SMOLKA, former Commander, Patrol Borough    )
Manhattan South, New York City Police    )
Department; TERENCE MONAHAN, Assistant    )
Chief of the Bronx Borough Command; JOHN J.    )
COLGAN, Assistant Chief, New York City Police    )
Department; JAMES P. O'NEILL, Deputy Chief,    )
New York City Police Department; NYPD    )
CAPTAIN ROBERT BONIFATI; NYPD    )
LIEUTENANT WILLIAM T. COOKE; POLICE    )
OFFICER MATTHEW DIVIRGILIO, Shield No.    )
31911; POLICE OFFICER JASON ANGEVINE,    )
Shield No. 31582; POLICE OFFICER MARC    )
STASI; JOHN DOES; RICHARD ROES;    )

FIRST AMENDED COMPLAINT

05 Civ. 7624

ECF CASE

JURY TRIAL DEMANDED

Deleted: S

1

HUDSON RIVER PARK TRUST,                    )
                                           )
                         Defendants.        )
--------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiffs JEFFREY PHILLIPS, RAFAEL

PORTO, JOEL MILLER, and MILES SWANSON seek relief for the defendants' violation of

their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United

States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and by

the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

2

herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs JEFFREY PHILLIPS and MILES SWANSON filed Notices of Claim for false arrest and related torts with the Comptroller of the City of New York on November 24, 2004, within 90 days of the incidents complained of herein.  MILES SWANSON additionally filed a Notice of Claim for malicious prosecution on January 24, 2005, within 90 days of the dismissal of his criminal charges.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.      Plaintiffs RAFAEL PORTO's and JOEL MILLER's applications to file late Notices of Claim were granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8.      Plaintiff JEFFREY PHILLIPS is a citizen of the United States, and at all times relevant herein resided in the state of Pennsylvania.

9.      Plaintiff RAFAEL PORTO is a citizen of Uraguay, and at all times relevant herein resided in the state of Pennsylvania.

10.      Plaintiff JOEL MILLER is a citizen of the United States, and at all times relevant herein resided in the state of Pennsylvania.

11.     Plaintiff MILES SWANSON is a citizen of the United States, and at all times relevant herein resided in Washington, D.C.

12.     Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

13.     Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

14.     Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

15.     STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

4

16.    DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

17.    THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

18.    NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

5

19.    NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department,  and  he  is  responsible,  in  whole  and/or  in  part,  for  the  creation,  implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

20.    RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  She is sued individually and in her official capacity.

21    NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  They are sued individually and in his official capacity.

22.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

23.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation,

6

promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

24.     Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

25.     Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

26.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

27.     Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs

7

complained of herein.  He is sued individually and in his official capacity.

28.    Defendants O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI

> **Deleted:** S

and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers,

servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police

Department, a municipal agency of defendant THE CITY OF NEW YORK.  Said individual

defendants are and were at all times relevant herein acting under color of state law in the course

and scope of their duties and functions as officers, agents, servants, and employees of defendant

THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority

vested in them by THE CITY OF NEW YORK and the New York City Police Department, and

were otherwise performing and engaging in conduct incidental to the performance of their lawful

functions in the course of their duties.  Defendants O'NEILL, BONIFATI, COOKE,

> **Deleted:** S

DIVIRGILIO, ANGEVINE, STASI and JOHN DOES are sued individually and in their official

capacity.

29.    Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER,

ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, and RICHARD ROES are and were

at all times relevant herein duly appointed and acting supervisory officers, servants, employees

and agents of THE CITY OF NEW YORK and/or the New York City Police Department,

responsible for the training, retention, supervision, discipline and control of police officers under

their command.  Said individual defendants are and were at all times relevant herein acting under

color of state law in the course and scope of their duties and functions as supervisory officers,

agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and

on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, and RICHARD ROES are sued individually and in their official capacity.

30.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at all times relevant herein a public benefit corporation, organized and existing pursuant to the laws of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks incidental to the maintenance and use of its structures and the employment of its employees as said risk attaches to the public consumers of the services provided by the HUDSON RIVER PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National Convention (RNC).  Said officials are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF FACTS

9

31.     Plaintiffs are all individuals who came to New York City in late August, 2004 to peacefully and lawfully exercise their rights to free speech and assembly during the period of the Republican National Convention ("RNC"), and to enjoy their time in New York City as out-of-town visitors during their stay.

32.     Plaintiffs were all arrested during one of the many mass-arrests conducted by the NYPD during the period of the RNC, arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

33.     On August 29, 2004, plaintiffs PHILLIPS, PORTO, and MILLER had participated in the large, peaceful, United for Peace and Justice march in Manhattan.  After relaxing for a time in Bryant Park, they decided to walk to Times Square.  They wanted to observe any further political expression that may have been occurring there and, if the spirit moved them, to further voice their political opinions.

34.     When they arrived at Broadway between 45th and 46th Streets the block was crowded.  Many people and police officers were all around.  As they made their way through the crowd along the sidewalk, they were asked by the police to step back underneath a scaffold that covered a significant portion of the sidewalk near 46th Street and Broadway.  They complied with this request, and shortly thereafter the crowd underneath the scaffold was surrounded by the police and penned in underneath the scaffold.

35.     Plaintiff MILES SWANSON had spent the day of August 29th as a legal observer, attempting to facilitate and bear witness to the various demonstrators' exercise of their lawful rights to free speech and assembly.  He went to Times Square to further serve as a legal observer, and was wearing a bright fluorescent green baseball cap at the time that identified him as a legal

10

observer affiliated with the National Lawyers Guild.

36.    While MILES SWANSON was near 46th Street and Broadway some of the police officers in the area were using batons and horses to shove and herd the crowd.  MILES SWANSON and others were ordered further back onto the sidewalk by police officers.

37.    Shortly thereafter the crowd that was underneath the scaffold was surrounded by the police and penned in underneath the scaffold, including MILES SWANSON.

38.    When plaintiffs and the rest of the crowd were penned in underneath the scaffolding the police brought forth orange netting that they used to surround the crowd.

39.    The crowd was not free to leave this location.  On information and belief, other than a small number of individuals, most of whom were employed in the media, who were selected and released from the penned-in area by the police officers, the rest of the people who were surrounded by the orange netting were handcuffed behind their backs and placed into vehicles by NYPD officers for transport to Pier 57.

40.    The arrest decision was made by Defendant O'NEILL, without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct.  This decision to engage in the mass arrests at 46th Street and Broadway was communicated to lower-ranking NYPD officers, who effected those orders.

41.    Defendant BONIFATI made the decision as to how and when to seal the arrestees under the scaffolding so that they could all be arrested pursuant to Defendant O'NEILL's directive.  Defendant BONIFATI did so without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct.  This decision as to how and when to seal the arrestees under the scaffolding so that they could all be

11

arrested pursuant to Defendant O'NEILL's directive was communicated to lower-ranking NYPD officers, who effected those orders.

42.    Defendants COOKE and RICHARD ROES were among the NYPD Commanding Officers who also exercised command responsibility at 46th Street and Broadway, and participated both directly and in their capacity as supervisors in making the wrongful mass arrests, including by assisting with the handcuffing process and the assignment of arrestees to their assigned arresting officers. They were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.

43.    Plaintiffs were handcuffed behind their backs and placed into vehicles by NYPD officers for transport to Pier 57.

44.    Defendant DIVIRGILIO was assigned as the arresting officer for plaintiff JEFFREY PHILLIPS and, on information and belief, for RAFAEL PORTO.

45.    Defendant ANGEVINE was assigned as the arresting officer for plaintiff JOEL MILLER.

46.    Defendant STASI, on information and belief, was assigned as the arresting officer for plaintiff MILES SWANSON.

47.    Plaintiffs were taken to Pier 57, a former bus depot that was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

12

**Deleted:** U

**Deleted:** S

**Deleted:** 29.  Upon information and belief, an order or orders was/were given by higher-ranking NYPD JOHN DOE defendants present at the scene of plaintiffs' arrests for the lower-ranking NYPD officers to engage in the mass arrests at that location.

48      Pier 57 is owned by and/or under the control of defendant HRPT.

49.     Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

50.     On information and belief, all of the arrestees from 46th and Broadway, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

51.     The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein.  There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier.  On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there.  During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

52.     Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests.  On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

53.     Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators

13

or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

54.    The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees in contravention of New York State Law, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court. Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives.  Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including

> Deleted: and

14

overly exacting property itemization procedures and the screening of each arrestee's paperwork

by the NYPD's Legal Division to determine and finalize what suggested charges should be

forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on

the arresting officers' paperwork.  Further unreasonable and unnecessary delays were also

suffered by RNC detainees upon their subsequent transfer to and detention at the Central

Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in

custody of the CITY OF NEW YORK for periods of time longer than were reasonable or

necessary.

      55.     After their detention at Pier 57, further callous and unreasonable treatment and

conditions of confinement were endured by plaintiffs during their transfer to and confinement at

the Central Booking Facility at 100 Centre Street.

      56.     On information and belief, during the periods of their confinement the vast

majority of RNC arrestees were subjected to unreasonably tight and painful wrist

restraints/handcuffs.

      57.     During their time in custody plaintiffs were subjected to unreasonably tight and

painful wrist restraints/handcuffs.

      58.     Defendant DIVIRGILIO told plaintiff JEFFREY PHIILLIPS, in sum and

substance, that he knew that the charges against the arrestees were "bullshit" and that the

arrestees had not committed any violations of the law.  Defendant DIVIRGILIO also referred to

Pier 57 as "Guantanamo."  When plaintiff JEFFREY PHILLIPS was arrested at 46th Street and

Broadway he asked a higher-ranking NYPD officer present there why he was being arrested.  In

response the officer indicated in the direction of a young man wearing a bright green Legal

Deleted: a

Observer's hat, and snidely told JEFFREY PHILLIPS, in sum and substance, that he should ask his legal advisor.

59.    Plaintiff JEFFREY PHILLIPS was released after approximately 21 hours in custody.  He was charged with two counts of disorderly conduct which have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

60.    Plaintiff RAFAEL PORTO was released after approximately 23 hours in custody. On information and belief, he was charged with two counts of disorderly conduct.  All charges against RAFAEL PORTO have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

61.    Plaintiff JOEL MILLER was released after approximately 22 hours in custody. He was charged with two counts of disorderly conduct which have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

62.    Plaintiff MILES SWANSON was released after approximately 25 hours in custody.  On information and belief, he was charged with two counts of disorderly conduct.  All charges against MILES SWANSON have been dismissed in their entirety.

63.    Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, certain segments of the press, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

64.    Defendant COHEN prior to the RNC caused the NYPD to be engaged in

16

widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism. The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time.

65.    This tone of hostility to demonstrators, and the resultant policies, customs, practices and usages to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC. These statements portrayed those who chose to engage in political protest in the most negative light. This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors. This sentiment was reiterated, summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as "terrorists" and "guilty" criminals.

66.    Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC

17

period on August 29, 2004.

67.     The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

68.     The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance, as well as other laws including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

69.     The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE
### UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

70.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

71.     By their conduct and actions in harassing, falsely arresting, maliciously

18

prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, and by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

**Deleted:** S

72.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

73.    The plaintiffs incorporate by reference the allegations set forth in all preceding

19

paragraphs as if fully set forth herein.

74.    By failing to remedy the wrongs committed by their subordinates, and in failing

to properly train, screen, supervise, or discipline their subordinates, supervisory officers

BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET,

MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO,

GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE

and RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed

under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth,

Sixth and Fourteenth amendments.

75.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

### THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

76.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

77.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants had policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional

conduct alleged herein.

78.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

20

practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

79.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

80.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of

21

ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

81.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

82.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

83.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees and of not ensuring that those fingerprints and other personal information were either destroyed or returned upon

22

dismissal of charges against RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

84.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

86.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices,

23

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

        87.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

        88.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit statute to people walking on the sidewalk; (c) enforcement of the unconstitutional Disorderly Conduct statute, Penal Law section 240.20(5) (obstructing pedestrian traffic); (d) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (e) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others

24

and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

89.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### FOURTH CLAIM

**LIABILITY OF HUDSON RIVER PARK TRUST
FOR CONSTITUTIONAL VIOLATIONS**

90.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

91.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

92.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

93.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable

25

consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional

rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its

First, Fourth, Fifth, and Fourteenth amendment.

94.     These acts, policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

95.     As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

**FIFTH CLAIM**

**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON
RIVER PARK TRUST FOR STATE LAW VIOLATIONS**

96.     The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

97.     The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN,

DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI,

DOES and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and

during the course and scope of their duties and functions as New York City police officers,

and/or while they were acting as agents and employees of defendant THE CITY OF NEW

YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiffs

pursuant to the state common law doctrine of respondeat superior.

98.     The conduct of employees and officials of the HUDSON RIVER PARK TRUST,

Deleted: S

alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

99.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

100.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

101.    By the actions described above, defendants did inflict assault and battery upon plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

102.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

103.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

104.    By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

105.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### MALICIOUS PROSECUTION

106.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

107.    By the actions described above, defendants maliciously prosecuted plaintiff MILES SWANSON without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff MILES SWANSON and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

108.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

28

**INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

109.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

110.    By the actions described above, defendants engaged in extreme and outrageous

conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs.

The acts and conduct of the defendants were the direct and proximate cause of injury and

damage to plaintiffs and violated their statutory and common law rights as guaranteed by the

laws and Constitution of the State of New York.

111.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## <u>TENTH CLAIM</u>

## <u>ABUSE OF PROCESS</u>

112.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

113.    By the conduct and actions described above, defendants employed regularly

issued process against plaintiffs compelling the performance or forbearance of prescribed acts.

The purpose of activating the process was intent to harm plaintiffs without economic or social

excuse or justification, and the defendants were seeking a collateral advantage or corresponding

detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and

conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs

and violated their statutory and common law rights as guaranteed by the laws and Constitution of

the State of New York.

114.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

### VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO

### FREE SPEECH AND ASSEMBLY

115.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

116.    By the actions described above, defendants violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

117.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

118.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

119.    By the actions described above, defendants violated the right of plaintiffs to equal

30

protection of law. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

120.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

### NEGLIGENCE

121.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

122.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

123.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

124.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

125.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST

31

negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs. The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

126.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

### FUTURE MEDICAL EXPENSES

127.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

128.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

129.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

### PRIMA FACIE TORT

130.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

131.    Defendants, without excuse or justification, and intending to inflict harm upon

32

plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

132.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

**SEVENTEENTH CLAIM**

**VIOLATION OF NEW YORK STATE CRIMINAL PROCEDURE LAW**

**§§ 160.10 AND 160.50**

133.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

134.    By the actions described above, defendants violated plaintiffs' rights under New York State Criminal Procedure Law §§ 160.10 and 160.50 by fingerprinting them without any right or authority to do so, and failing to request or ensure that the fingerprints and other personal information were destroyed or returned upon dismissal of the criminal charges against plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

135.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

33

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

        a. Compensatory damages;

        b. Punitive damages;

        c. The convening and empanelling of a jury to consider the merits of the claims herein;

        d. Costs and interest and attorney's fees;

        e. Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
            August ___, 2007

                                _____
                                JEFFREY A. ROTHMAN, Esq.
                                (JR-0398)
                                315 Broadway, Suite 200
                                New York, New York 10007
                                (212) 227-2980
                                Attorney for Plaintiffs

**Deleted:** 575 Madison Avenue

**Deleted:** 1006

**Deleted:** 22

**Deleted:** 348-9833; (212) 937-8450

34

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
JEFFREY PHILLIPS, RAFAEL PORTO, JOEL            )
MILLER, and MILES SWANSON                        )
                                                 )
                    Plaintiffs,                  )
                                                 )
        -against-                                )          **FIRST AMENDED COMPLAINT**
                                                 )
THE CITY OF NEW YORK; MICHAEL                    )
BLOOMBERG, Mayor of the City of New York;        )          **05 Civ. 7624**
RAYMOND KELLY, New York City Police              )
Commissioner; STEPHEN HAMMERMAN,                 )          **ECF CASE**
Former Deputy Commissioner for Legal Matters,    )
New York City Police Department; DAVID           )          **JURY TRIAL DEMANDED**
COHEN, Deputy Commissioner for Intelligence,     )
New York City Police Department; THOMAS          )
DOEPFNER, Assistant Deputy Commissioner for      )
Legal Matters, New York City Police Department;  )
NYPD LIEUTENANT DANIEL ALBANO; NYPD              )
DEPUTY INSPECTOR KERRY SWEET, NYPD               )
Legal Bureau Executive Officer; NYPD Legal       )
Bureau Senior Counsel RUBY MARIN-JORDAN          )
NYPD LEGAL BUREAU SUPERVISOR(S) AT               )
PIER 57; JOSEPH  ESPOSITO, Chief of the New      )
York Police Department; THOMAS GRAHAM,           )
Commander, Disorder Control Unit, New York City  )
Police Department; JACK MCMANUS, Assistant       )
Chief, New York City Police Department; BRUCE    )
SMOLKA, former Commander, Patrol Borough         )
Manhattan South, New York City Police            )
Department; TERENCE MONAHAN, Assistant           )
Chief of the Bronx Borough Command; JOHN J.      )
COLGAN, Assistant Chief, New York City Police    )
Department; JAMES P. O'NEILL, Deputy Chief,      )
New York City Police Department; NYPD            )
CAPTAIN ROBERT BONIFATI; NYPD                    )
LIEUTENANT WILLIAM T. COOKE; POLICE              )
OFFICER MATTHEW DIVIRGILIO, Shield No.           )
31911; POLICE OFFICER JASON ANGEVINE,            )
Shield  No. 31582; POLICE OFFICER MARC           )
STASI; JOHN DOES; RICHARD ROES;                  )

1

HUDSON RIVER PARK TRUST,                    )
                                           )
                        Defendants.        )
--------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiffs JEFFREY PHILLIPS, RAFAEL

PORTO, JOEL MILLER, and MILES SWANSON seek relief for the defendants' violation of

their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United

States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and by

the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

2

herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs JEFFREY PHILLIPS and MILES SWANSON filed Notices of Claim for false arrest and related torts with the Comptroller of the City of New York on November 24, 2004, within 90 days of the incidents complained of herein.  MILES SWANSON additionally filed a Notice of Claim for malicious prosecution on January 24, 2005, within 90 days of the dismissal of his criminal charges.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.      Plaintiffs RAFAEL PORTO's and JOEL MILLER's applications to file late Notices of Claim were granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8.      Plaintiff JEFFREY PHILLIPS is a citizen of the United States, and at all times relevant herein resided in the state of Pennsylvania.

9.      Plaintiff RAFAEL PORTO is a citizen of Uraguay, and at all times relevant herein resided in the state of Pennsylvania.

10.      Plaintiff JOEL MILLER is a citizen of the United States, and at all times relevant herein resided in the state of Pennsylvania.

11.      Plaintiff MILES SWANSON is a citizen of the United States, and at all times

relevant herein resided in Washington, D.C.

12.    Defendant THE CITY OF NEW YORK ("The City") is and was at all times

relevant herein a municipal entity created and authorized under the laws of the State of New York.

It is authorized by law to maintain a police department, which acts as its agent in the area of law

enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK

assumes the risks incidental to the maintenance of a police force and the employment of police

officers as said risk attaches to the public consumers of the services provided by the New York

City Police Department ("NYPD").

13.    Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of

the City of New York and the chief policy making official for the City and its departments, including the

New York City Police Department and is responsible, in whole and/or in part, for the creation,

implementation, promulgation and enforcement of the policies, practices and/or customs complained of

herein.  He is sued in both his individual and official capacities.

14.    Defendant RAYMOND KELLY is and was at all times relevant herein, the Police

Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the

creation, implementation, promulgation and enforcement of the policies, practices and /or customs

complained of herein.  He is sued individually and in his official capacity.

15.    STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy

Commissioner for Legal Matters for the New York City Police Department, and he is responsible,

in whole and/or in part, for the creation, implementation, promulgation and enforcement of the

policies, practices and /or customs complained of herein.  He is sued individually and in his

official capacity.

4

16.     DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

17.     THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

18.     NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

19.     NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

20.     RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and

enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in her official capacity.

21    NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. They are sued individually and in his official capacity.

22.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

23.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

24.    Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

25.    Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former

6

Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

26.    Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

27.    Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

28.    Defendants O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK.  Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority

7

vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI and JOHN DOES are sued individually and in their official capacity.

29.    Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of police officers under their command.  Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, and RICHARD ROES are sued individually and in their official capacity.

30.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks

incidental to the maintenance and use of its structures and the employment of its employees as

said risk attaches to the public consumers of the services provided by the HUDSON RIVER

PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON

RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted

THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National

Convention (RNC).  Said officials are and were at all times relevant herein acting under color of

state law in the course and scope of their duties and functions as officials of defendant HUDSON

RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority

vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.

## **STATEMENT OF FACTS**

31.     Plaintiffs are all individuals who came to New York City in late August, 2004 to

peacefully and lawfully exercise their rights to free speech and assembly during the period of the

Republican National Convention ("RNC"), and to enjoy their time in New York City as out-of-

town visitors during their stay.

32.     Plaintiffs were all arrested during one of the many mass-arrests conducted by the

NYPD during the period of the RNC, arrests made by the NYPD without probable cause or

individualized suspicion of criminal activity.

33.     On August 29, 2004, plaintiffs PHILLIPS, PORTO, and MILLER had

participated in the large, peaceful, United for Peace and Justice march in Manhattan. After relaxing for a time in Bryant Park, they decided to walk to Times Square. They wanted to observe any further political expression that may have been occurring there and, if the spirit moved them, to further voice their political opinions.

34.    When they arrived at Broadway between 45th and 46th Streets the block was crowded. Many people and police officers were all around. As they made their way through the crowd along the sidewalk, they were asked by the police to step back underneath a scaffold that covered a significant portion of the sidewalk near 46th Street and Broadway. They complied with this request, and shortly thereafter the crowd underneath the scaffold was surrounded by the police and penned in underneath the scaffold.

35.    Plaintiff MILES SWANSON had spent the day of August 29th as a legal observer, attempting to facilitate and bear witness to the various demonstrators' exercise of their lawful rights to free speech and assembly. He went to Times Square to further serve as a legal observer, and was wearing a bright fluorescent green baseball cap at the time that identified him as a legal observer affiliated with the National Lawyers Guild.

36.    While MILES SWANSON was near 46th Street and Broadway some of the police officers in the area were using batons and horses to shove and herd the crowd. MILES SWANSON and others were ordered further back onto the sidewalk by police officers.

37.    Shortly thereafter the crowd that was underneath the scaffold was surrounded by the police and penned in underneath the scaffold, including MILES SWANSON.

38.    When plaintiffs and the rest of the crowd were penned in underneath the scaffolding the police brought forth orange netting that they used to surround the crowd.

10

39.     The crowd was not free to leave this location.  On information and belief, other than a small number of individuals, most of whom were employed in the media, who were selected and released from the penned-in area by the police officers, the rest of the people who were surrounded by the orange netting were handcuffed behind their backs and placed into vehicles by NYPD officers for transport to Pier 57.

40.     The arrest decision was made by Defendant O'NEILL, without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct.  This decision to engage in the mass arrests at 46th Street and Broadway was communicated to lower-ranking NYPD officers, who effected those orders.

41.     Defendant BONIFATI made the decision as to how and when to seal the arrestees under the scaffolding so that they could all be arrested pursuant to Defendant O'NEILL's directive.  Defendant BONIFATI did so without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct.  This decision as to how and when to seal the arrestees under the scaffolding so that they could all be arrested pursuant to Defendant O'NEILL's directive was communicated to lower-ranking NYPD officers, who effected those orders.

42.     Defendants COOKE and RICHARD ROES were among the NYPD Commanding Officers who also exercised command responsibility at 46th Street and Broadway, and participated both directly and in their capacity as supervisors in making the wrongful mass arrests, including by assisting with the handcuffing process and the assignment of arrestees to their assigned arresting officers.  They were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge

11

that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.

43.    Plaintiffs were handcuffed behind their backs and placed into vehicles by NYPD officers for transport to Pier 57.

44.    Defendant DIVIRGILIO was assigned as the arresting officer for plaintiff JEFFREY PHILLIPS and, on information and belief, for RAFAEL PORTO.

45.    Defendant ANGEVINE was assigned as the arresting officer for plaintiff JOEL MILLER.

46.    Defendant STASI, on information and belief, was assigned as the arresting officer for plaintiff MILES SWANSON.

47.    Plaintiffs were taken to Pier 57, a former bus depot that was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

48    Pier 57 is owned by and/or under the control of defendant HRPT.

49.    Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

50.    On information and belief, all of the arrestees from 46th and Broadway, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

51.    The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with

a dark grimy substance that spread to the clothing and bodies of those detained therein. There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier. On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there. During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

52.    Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests**.** On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

53.    Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances. In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

13

54.    The detainees at Pier 57, including plaintiffs, were further subjected to
unreasonable delay in being processed and moved through the system.  The City insisted on
fingerprinting all RNC detainees in contravention of New York State Law, the vast number of
whom were arrested and charged based only on the alleged commission of violations that did not
rise to the level of crimes under New York State law, and who therefore under New York State
law did not have to be fingerprinted to be processed and released with a date to return for court.
Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57
not equipped with any fingerprinting machines.  On information and belief, once the City
eventually fingerprinted these RNC arrestees their fingerprints and other personal information
were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and
interests of the arrestees and creating the potential for unlawful surveillance activity by law
enforcement authorities, for the unlawful chilling of their exercise of free speech and association,
and for disruptions to their lives.  Additionally, unnecessary and dilatory additional processing
steps were taken at Pier 57 that delayed the detainees' movement through the system, including
overly exacting property itemization procedures and the screening of each arrestee's paperwork
by the NYPD's Legal Division to determine and finalize what suggested charges should be
forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on
the arresting officers' paperwork.  Further unreasonable and unnecessary delays were also
suffered by RNC detainees upon their subsequent transfer to and detention at the Central
Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in
custody of the CITY OF NEW YORK for periods of time longer than were reasonable or
necessary.

14

55.    After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

56.    On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

57.    During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

58.    Defendant DIVIRGILIO told plaintiff JEFFREY PHIILLIPS, in sum and substance, that he knew that the charges against the arrestees were "bullshit" and that the arrestees had not committed any violations of the law.  Defendant DIVIRGILIO also referred to Pier 57 as "Guantanamo."  When plaintiff JEFFREY PHILLIPS was arrested at 46th Street and Broadway he asked a higher-ranking NYPD officer present there why he was being arrested.  In response the officer indicated in the direction of a young man wearing a bright green Legal Observer's hat, and snidely told JEFFREY PHILLIPS, in sum and substance, that he should ask his legal advisor.

59.    Plaintiff JEFFREY PHILLIPS was released after approximately 21 hours in custody.  He was charged with two counts of disorderly conduct which have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

60.    Plaintiff RAFAEL PORTO was released after approximately 23 hours in custody.  On information and belief, he was charged with two counts of disorderly conduct.  All charges against RAFAEL PORTO have been dismissed in their entirety of by way of an adjournment in

15

contemplation of dismissal.

61.    Plaintiff JOEL MILLER was released after approximately 22 hours in custody. He was charged with two counts of disorderly conduct which have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

62.    Plaintiff MILES SWANSON was released after approximately 25 hours in custody.  On information and belief, he was charged with two counts of disorderly conduct.  All charges against MILES SWANSON have been dismissed in their entirety.

63.    Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, certain segments of the press, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

64.    Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time.

16

65.     This tone of hostility to demonstrators, and the resultant policies, customs, practices and usages to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC. These statements portrayed those who chose to engage in political protest in the most negative light. This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors. This sentiment was reiterated, summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as "terrorists" and "guilty" criminals.

66.     Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

67.     The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating. Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57. These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

17

68.     The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance, as well as other laws including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

69.     The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

70.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

71.     By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, and by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER

18

57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL,

BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI and JOHN DOES, acting under color

of law and without lawful justification, intentionally, maliciously, and with a deliberate

indifference to or a reckless disregard for the natural and probable consequences of their acts,

caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42

U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and

Fourteenth amendments.

72.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

73.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

74.    By failing to remedy the wrongs committed by their subordinates, and in failing

to properly train, screen, supervise, or discipline their subordinates, supervisory officers

BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET,

MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO,

GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE

and RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed

under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth,

19

Sixth and Fourteenth amendments.

75.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

76.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

77.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants had policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional

conduct alleged herein.

78.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of failing to properly train, screen, supervise, or discipline

employees and police officers, and of failing to inform the individual defendants' supervisors of

their need to train, screen, supervise or discipline said defendants.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged

herein.

79.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or

retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW

YORK during the period of the RNC had policies, practices, customs, and usages of punishing

and suppressing peaceful expression and association. The CITY OF NEW YORK during the

period of the RNC had policies, practices, customs, and usages of using the mechanisms and

conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The

CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and

usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF

NEW YORK during the period of the RNC had policies, practices, customs, and usages of

preventive detention.  These policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

80.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the

Republican Party at all costs, including the use of mass arrests and preventive detention, and of

ensuring that the Republican Delegates to the Republican National Convention were able to

move among and between their hotels, Madison Square Garden, and other RNC venues without

any risk of impediment.  These policies, practices, customs, and usages were a direct and

proximate cause of the unconstitutional conduct alleged herein.

81.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of making false arrests at the slightest subjective perception of

uncooperativeness by civilians or that the police were not in, or may soon not be in, full control

21

of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

82.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

83.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees and of not ensuring that those fingerprints and other personal information were either destroyed or returned upon dismissal of charges against RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

84.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

86.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

87.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

23

88.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit statute to people walking on the sidewalk; (c) enforcement of the unconstitutional Disorderly Conduct statute, Penal Law section 240.20(5) (obstructing pedestrian traffic); (d) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (e) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

89.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

**FOURTH CLAIM**

24

## LIABILITY OF HUDSON RIVER PARK TRUST
## FOR CONSTITUTIONAL VIOLATIONS

90.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

91.     At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

92.     At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

93.     By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

94.     These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

95.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

25

## FIFTH CLAIM

**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS**

96.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

97.    The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI, DOES and ROES alleged herein, occurred while they were on duty and in uniform, and/or in during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

98.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

99.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

## ASSAULT AND BATTERY

100.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

101.     By the actions described above, defendants did inflict assault and battery upon plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

102.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

## FALSE ARREST and FALSE IMPRISONMENT

103.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

104.     By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

105.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

27

costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

## MALICIOUS PROSECUTION

106.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

107.    By the actions described above, defendants maliciously prosecuted plaintiff MILES SWANSON without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff MILES SWANSON and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

108.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

109.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

110.    By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

28

111.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## ABUSE OF PROCESS

112.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

113.    By the conduct and actions described above, defendants employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

114.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO

## FREE SPEECH AND ASSEMBLY

115.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

116.    By the actions described above, defendants violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

117.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

118.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

119.    By the actions described above, defendants violated the right of plaintiffs to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

120.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

### NEGLIGENCE

30

121.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

122.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

123.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

124.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

125.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

126.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

31

## FUTURE MEDICAL EXPENSES

127.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

128.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

129.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

## PRIMA FACIE TORT

130.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

131.    Defendants, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

132.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

32

costs and expenses, and were otherwise damaged and injured.

## SEVENTEENTH CLAIM

## VIOLATION OF NEW YORK STATE CRIMINAL PROCEDURE LAW

## §§ 160.10 AND 160.50

133.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

134.    By the actions described above, defendants violated plaintiffs' rights under New York State Criminal Procedure Law §§ 160.10 and 160.50 by fingerprinting them without any right or authority to do so, and failing to request or ensure that the fingerprints and other personal information were destroyed or returned upon dismissal of the criminal charges against plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

135.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empanelling of a jury to consider the merits of the claims herein;

33

d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
            August 29, 2007


                                    _____/S/_____
                                    JEFFREY A. ROTHMAN, Esq.
                                    (JR-0398)
                                    315 Broadway, Suite 200
                                    New York, New York 10007
                                    (212) 227-2980
                                    Attorney for Plaintiffs

34