Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

UDO DRESCHER,                                    )
                                                 )
                              Plaintiff,          )
                                                 )
               -against-                         )
                                                 )        **FIRST AMENDED COMPLAINT**
                                                 )
THE CITY OF NEW YORK; MICHAEL                    )        **05 Civ. 7541 (KMK)(JCF)**
BLOOMBERG, Mayor of the City of New York;        )
RAYMOND KELLY, New York City Police              )        **ECF CASE**
Commissioner; STEPHEN HAMMERMAN,                 )
Former Deputy Commissioner for Legal Matters,    )        **JURY TRIAL DEMANDED**
New York City Police Department; DAVID           )
COHEN, Deputy Commissioner for Intelligence,     )
New York City Police Department; THOMAS          )
DOEPFNER, Assistant Deputy Commissioner for      )
Legal Matters, New York City Police Department;  )
NYPD LIEUTENANT DANIEL ALBANO; NYPD              )
DEPUTY INSPECTOR KERRY SWEET, NYPD               )
Legal Bureau Executive Officer; NYPD Legal       )
Bureau Senior Counsel RUBY MARIN-JORDAN          )
NYPD LEGAL BUREAU SUPERVISOR(S) AT               )
PIER 57; JOSEPH ESPOSITO, Chief of the New       )
York Police Department; THOMAS GRAHAM,           )
Commander, Disorder Control Unit, New York City  )
Police Department; JACK MCMANUS, Assistant       )
Chief, New York City Police Department; BRUCE    )
SMOLKA, former Commander, Patrol Borough         )
Manhattan South, New York City Police            )
Department; TERENCE MONAHAN, Assistant           )
Chief of the Bronx Borough Command; JOHN J.      )
COLGAN, Assistant Chief, New York City Police    )
Department; CAPTAIN JOSEPH DOWLING;              )
NEW YORK CITY POLICE OFFICER KEGHAM              )
JARJOKIAN, Shield No. 1638; NEW YORK CITY        )
POLICE OFFICER; NEW YORK CITY POLICE             )
OFFICER GEORGE SHANNON, SHIELD NO.               )
06542; JOHN DOE WHITE SHIRT SUPERVISOR           )
WHO ORDERED THE ARREST OF UDO                    )
DRESCHER; JOHN DOES; RICHARD ROES;               )
HUDSON RIVER PARK TRUST,                         )
                                                 )
                              Defendants.         )
--------------------------------------------------------------X

---

**Deleted:** s

**Deleted:** #

**Deleted:** ¶
40th Precinct, Bronx

**Deleted:** , being a presently unidentified member of ¶
the New York City Police Department

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which the plaintiff UDO DRESCHER seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.  The plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.    This action is brought pursuant to 42 U.S.C. §1983 and §1988, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is conferred upon this Court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(3) and (4), this being an action seeking redress for the violation of plaintiff's constitutional and civil rights.

3.    Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. §1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

4.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).  Plaintiff was arrested, subsequently confined and prosecuted in the Southern District of New York.

## JURY TRIAL DEMANDED

5.     Plaintiff demands a trial by jury on each and every one of his claims pleaded herein.

Deleted: s

## NOTICE OF CLAIM

6.     Plaintiff timely filed a Notice of Claim with the Comptroller of the defendant CITY OF NEW YORK on November 24, 2004, within 90 days of the incidents complained of herein. More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.     Defendant CITY OF NEW YORK assigned claim number 2004PI026552 to plaintiff's claim.

8.     This action has been commenced within one year and ninety days of the date of occurrence of events giving rise to this Complaint.

## PARTIES

9.     Plaintiff UDO DRESCHER is a resident of the State of New York.

10.     Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

11.     Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation,

implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

12. Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

13. STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

14. DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

15. THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

16. NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

17. NYPD DEPUTY INSPECTOR KERRY SWEET, is and was at all times relevant herein a

Deputy Inspector in and the Executive Officer of the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

18. RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in her official capacity.

19. NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. They are sued individually and in his official capacity.

20. Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

21. Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

22.     Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

23.     Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

24.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

25.     Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

26. Defendants DOWLING, JARJOKIAN, SHANNON, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants DOWLING, JARJOKIAN, SHANNON, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and JOHN DOES are sued individually and in their official capacity.

27. Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of police officers under their command. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with

the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and RICHARD ROES are sued individually and in their official capacity.

28.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at all times relevant herein a public benefit corporation, organized and existing pursuant to the laws of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks incidental to the maintenance and use of its structures and the employment of its employees as said risk attaches to the public consumers of the services provided by the HUDSON RIVER PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National Convention (RNC).  Said officials are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

**STATEMENT OF FACTS**

Deleted: COMMON TO ALL CAUSES OF ACTION

29.     Plaintiff is and was, since his admission to the bar of the State of New York in 1992, an attorney in good standing.

30.     Concerned about potential confrontations between demonstrators and the police during the 2004 Republican National Convention (RNC), Plaintiff volunteered to serve as a "legal observer" after he was made aware of a search for trained legal professionals conducted by an organization called the National Lawyers Guild.

31.     Legal observers are unpaid volunteers whose role it is to record arrests and document police activity during events at which arrests are possible or likely.

32.     After an initial training in the aspects and proper conduct of a legal observer, plaintiff served in that role for multiple events on August 27 and 28, 2004.  During some of these events he observed and documented a variety of arrests, including a mass-arrest.  Some of the events observed by the plaintiff ended without confrontation and arrests.

33.     On August 29, 2004, the plaintiff volunteered as legal observer for the third day in a row on occasion of a bicycle ride that commenced at Union Square in Manhattan.

34.     Approximately six legal observers who, given the nature of the event, were riding bicycles themselves, were assigned to that event.

35.     Because of the number of participants the legal observers were positioned at different sections of the bicycle ride.  The plaintiff took a position near the front.

36.     The ride proceeded uneventfully at first.  At 14th Street, a uniformed, on information and belief of the rank of Lieutenant or higher, uniformed member of the NYPD in a police vehicle hand-signaled to the bicycle riders to continue the ride up on 6th Avenue.

Deleted: as it appeared higher ranking

Deleted: police officer

Deleted: n unmarked

37.     Shortly thereafter, near Herald Square, the riders passed through an area of heavy

(car) traffic that, unrelated to the ride, blocked at least one intersection.

38.     As the ride continued north on Sixth Avenue, at approximately 38th Street, unidentified men in civil clothing on motorized scooters abruptly and rather aggressively drove through the group of bicyclists, passing them both left and right, until they reached the front of the ride, where they placed their scooters perpendicular across the street in front of the bicyclists, who were waiting for the light to change from red to green.

39.     When the light changed, the bicyclists continued to ride north on 6th Avenue.

40.     The attempts by the unidentified scooter-drivers to block the bicyclists were repeated once or twice more and created chaos among the bicycle riders.

41.     Up to this point, the ride had proceeded peacefully and in an orderly fashion.

42.     The plaintiff had seen these scooter-drivers during the previous two days at other events, during which he had acted as legal observer, and knew them from their appearance and *modus operandi* to be undercover police officers initiating arrests.

43.     The people riding the scooters did not identify themselves nor was any order given to disperse or discontinue the bicycle ride.

44.     When the plaintiff reached the intersection of Sixth Avenue and 41st Street, he stopped his bicycle on the eastern curb of 6th Avenue at the northeastern corner of the intersection.

45.     He noticed a continuous line of uniformed police officers on foot one block further north at the intersection of 6th Avenue and 42nd Street, blocking off Sixth Avenue in its entirety from west to east.

46.     As Sixth Avenue is a one-way roadway running north but was blocked off by the NYPD at the next intersection, the only way to continue the bicycle ride was to turn west on 41st Street, which itself is a one-way street running in east-west direction.

47.     Accompanied by the wailing of sirens, marked and unmarked police vehicles and numerous police officers both in uniform and civil clothing began to spread out into and throughout the intersection, arresting bicyclists in and near that intersection, wrestling and knocking some of them to the ground so as to cause physical injuries, including fractures.

48.     NYPD officers used pepper spray or a similar irritating substance against some bicyclists even in the absence of resistance.

49.     All this was done in a manner disproportionate to the peaceful and, up to the NYPD's intervention orderly, conduct of those participating in the event.

50.     While the plaintiff observed the events in the intersection unfold from his location at the eastern curb of 6ᵗʰ Avenue, the plaintiff heard what sounded like the collision between a bicycle and what turned out to be an unmarked police van.

51.     The plaintiff further observed that officers jumped out of the vehicle apparently to apprehend a bicyclist who was lying on the ground.

52.     Mindful of his having volunteered as a legal observer and concerned that the bicyclist might have gotten injured as a result of the collision or might be dealt with overly aggressively by the arresting officers, the plaintiff ventured into the crosswalk to observe the situation.

53.     The plaintiff positioned himself south of the police vehicle, which was standing diagonally in a northeasterly direction, so that he would not obstruct any traffic, which by that time had ceased to flow anyway, nor the officers.

54.     After a few seconds, defendant JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER, a uniformed member of the NYPD wearing a white shirt and on information and belief of the rank of Lieutenant or higher, said to the plaintiff: "Out of the way,

**Deleted:** police officer

guy!"

55.     Holding his bicycle with one hand, the plaintiff attempted to follow that
instruction and began to walk straight to nearest sidewalk on the west side of 6th Avenue and
stated: "I just want to get on the sidewalk."

56.     The officer, defendant JOHN DOE, then said to the plaintiff: "Get back on the
sidewalk!"

57.     The plaintiff asked: "I'm in the middle of the street, which sidewalk do you want
me to go to?"

58.     Instead of responding to that question and without any justifiable cause, defendant
JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER then placed
the plaintiff under arrest.

59.     That was at 12:03 p.m.

60.     Throughout the bicycle ride leading up to the arrest and at the time of his arrest
the plaintiff was clearly and visibly identified as legal observer both by a bright, neon-green
baseball cap inscribed in the front "Legal Observer, National Lawyers Guild" and by a green
name tag inscribed "Drescher, Udo, Legal Observer RNC 2004 NYC, NLG," which he wore
around his neck on the outside of his shirt.

61.     Immediately after placing the plaintiff under arrest, defendant JOHN DOE WHITE
SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER handed the plaintiff to defendant
KEGHAM JARJOKIAN.

62.     Defendant JARJOKIAN was thereby assigned as Plaintiff's "arresting officer" by
defendant JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER

63.     Defendant KEGHAM JARJOKIAN put plastic handcuffs tightly around the

> **Deleted:** defendant JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER

> **Formatted:** Bullets and Numbering

plaintiff's wrists, causing significant pain; took his picture; and instructed him to take a sitting position on the nearby curb at the west side of Sixth Avenue, ironically the place where plaintiff originally had tried to go to.

> **Deleted:** (see paragraph 39 above).

64.   Defendant KEGHAM JARJOKIAN also seized the plaintiff's bicycle as arrest evidence.

65.   The plaintiff was also subjected to humiliation, e.g. when about two minutes after

> **Formatted:** Bullets and Numbering

the arrest defendant KEGHAM JARJOKIAN asked one of his colleagues, on information and belief a Police Officer named Adam Pieragostini, who was slowly driving by in a van filled with other officers, referring to the plaintiff: "Adam, what should I do with this guy?" Whereupon the Officer Pieragostini answered: "Go fuck him."

> **Deleted:** Alan [the officer's name might have been
> **Deleted:** Alan!
> **Deleted:** W
> **Deleted:** other o

66.   Another NYPD officer who was sitting in the van stuck his tongue out at the plaintiff in an apparent act of mockery.

67.   After spending close to two hours at that intersection, during which time the plaintiff remained handcuffed very tightly behind his back and experienced great physical discomfort, the plaintiff was put in a police vehicle and, after some more waiting, still in very tight handcuffs that continued to cause significant pain and great physical discomfort, transported to Pier 57 with other arrestees.

68.   Pier 57 is owned by and/or under the control of defendant HRPT.

69.   Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

70.   On information and belief, all of the arrestees from 41ST and 6TH Avenue, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

71.    The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein.  There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier.  On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there.  During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

72.    Plaintiff was processed at Pier 57, and his arresting officer was instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiff's arrest.  On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

73.    Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights

within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

74.     At Pier 57 the plaintiff was repeatedly searched and held in deplorable conditions.

75.     At Pier 57 the plaintiff was kept with numerous other arrestees in holding cells that consisted of chain-link fence topped with barbed wire.

76.     During that time, the plaintiff repeatedly asked to be allowed to speak to counsel, a request that was persistently denied by the NYPD.

77.     The detainees at Pier 57, including plaintiff, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees in contravention of New York State Law, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court.  Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 was not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives.  Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and thea screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be

forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork.  Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

78.     On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

79.     During his time in custody plaintiff was subjected to unreasonably tight and painful wrist restraints/handcuffs.

80.     After his detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiff during his transfer to and confinement at the Central Booking Facility at 100 Centre Street.

81.     Around 7:30 pm, the plaintiff was transported, again in handcuffs, from Pier 57 to 100 Centre Street, where his mugshot was taken, where he was fingerprinted, and where he was repeatedly put in plastic handcuffs, metal handcuffs and even metal foot-chains, forced to march through the halls with four other arrestees like a chain gang.

82.     Frequent changes between various holding cells and the conditions in those cells, being overcrowded and hot, prevented him from sleeping.

83.     When the plaintiff met, dirty and over-tired, with a court-appointed lawyer for the first time around dawn the next morning, he was advised that he was being charged with Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, and

**Formatted:** Bullets and Numbering

**Deleted:** Pier 57 is a former bus depot that was rented by the NYPD from its owner, the Hudson River Park Trust, and, absent a certificate of occupancy authorizing such use, transformed into a detention facility for the processing of arrestees.¶

Parading Without a Permit.

**Formatted:** Bullets and Numbering

84.    Defendant KEGHAM JARJOKIAN falsely alleged in a criminal court complaint that he "observed the defendant [Drescher], intentionally cause a public inconvenience, annoyance, and alarm, by riding a bicycle in a roadway at [the intersection of West 41 Street and Sixth Avenue], a public place, thereby obstructing vehicular traffic [and that he observed] defendant parading at said location with at least 15 other bicyclists without a permit from the police commissioner [and that he observed] a police barricade set-up (sic) on the west side of West 41 Street and said barricade consisted of approximately 10 police officers standing next to bicycles and scooters, which were lined tire-to-tire from the southwest corner to the northwest corner of West 41 Street [and that he observed] defendant riding his bicycle, among other bicyclists, turn left onto West 41 Street from Sixth Avenue into the aforementioned barricade set up in the roadway, requiring deponent and other police officers to block the roadway of West 41 Street with a police vehicle [and that he observed] that the defendant's aforementioned conduct prevented pedestrian traffic from traveling across Sixth Avenue and from traveling across West 41 Street."

85.    Defendant SHANNON was cited on Defendant JARJOKIAN's arrest paperwork as an informing officer.  Defendant JARJOKIAN's arrest paperwork states that he saw Plaintiff doing things that Plaintiff never did.

86.    Defendant DOWLING ordered the arrests of a large number of bicyclists nearby and the assignment of Defendant SHANNON as the informing officer for all of them, and was responsible, in whole or in part, for creating the conditions that led to the wrongful arrest of Plaintiff and the creation of the false charges lodged against him.

**Formatted:** Bullets and Numbering

87.    The arraignment judge released the plaintiff on plaintiff's own recognizance from

criminal court at approximately 8:15 a.m. on August 30, 2004, more than 20 hours after his arrest.

88.    Defendants KEGHAM JARJOKIAN and JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER, knowingly and intentionally arrested plaintiff without a warrant and absent probable cause or other legal justification.

| Deleted: y |
|---|

89.    The plaintiff was forced to attend court on multiple occasions between August 30 and December 8, 2004 to defend against the false criminal charges brought against him. Plaintiff was thereby deprived of his liberty and freedom of movement during those court appearances.

90.    On December 8, 2004, over three months after his arrest, plaintiff's criminal charges were dismissed in their entirety on the motion of the People, not inconsistent with the plaintiff's innocence.

91.    The conduct of the individual defendants in restraining, falsely arresting, falsely imprisoning and maliciously prosecuting plaintiff directly and proximately prevented plaintiff from exercising his right to free speech, deprived him of his liberty, and caused plaintiff serious physical and emotional injury, mental anguish, humiliation and embarrassment.

92.    The plaintiff had to undertake considerable effort and expense not only in defending the unfounded charges by hiring defense counsel and incurring other expenses but also in replacing and retaining his property that had been seized by defendants.

93.    The physical injuries the plaintiff sustained as a result of the individual defendants' conduct described herein included but were not limited to temporary nerve damage in plaintiff's wrists as a result of the overly tight handcuffing leading to pain and temporary numbness that lasted for weeks as well as, upon information and belief, exposure to harmful

substances during the plaintiff's detention in Pier 57.

94.     The arrest and prosecution of plaintiff was without probable cause whatsoever, and was done maliciously, falsely and in bad faith. The individual defendants acted with reckless and wanton disregard of the plaintiff's rights.

95.     Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, certain segments of the press, and the National Lawyers Guild. Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

96.     Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism. The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time.

97.     This tone of hostility to demonstrators, and the resultant policies, customs, practices and usages to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC. These statements portrayed those who chose to engage in political protest in the most negative

light. This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors. This sentiment was reiterated, summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiff and those similarly situated as "terrorists" and "guilty" criminals.

98.     Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

99.     The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating. Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57. These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

100.     The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance, as well as other laws including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

101.     The CITY OF NEW YORK engaged in false arrests and used the conditions and

length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

### FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE
### UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

102.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

103.    By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiff, and by subjecting plaintiff to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, JARJOKIAN, SHANNON, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States

Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

104.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

105.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

106.    By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

107.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF THE CITY OF NEW YORK

**FOR CONSTITUTIONAL VIOLATIONS**

108.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

109.   At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

110.   At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

111.   At all times relevant for this complaint, defendant CITY OF NEW YORK, acting through the NYPD, had in effect a policy, practice, custom and usage that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

112.   The planned protests and events around the RNC were anticipated to involve a large number of people.

113.   Upon information and belief, defendant CITY OF NEW YORK planned and implemented a policy, practice, custom and usage of controlling the RNC protests and events and the participants of these events, that was designed and did preempt lawful activities by

illegally arresting protesters as well as bystanders and legal observers and needlessly detaining them for excessively long periods. The purpose of these proactive arrests and protracted periods of detention was to ensure that protesters could not resume the protests that were broken up by the illegal arrests, or start or return to other protests critical of the RNC.  Upon information and belief, defendant CITY OF NEW YORK consciously disregarded the illegality and unconstitutionality of said arrests and detentions in order to facilitate and promote the CITY OF NEW YORK's desired appeasement of the mayor's own Republican Party and its members, including the president of the United States.

114.    In addition, the CITY OF NEW YORK has had in effect a policy, practice, custom and usage that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

115.    For example, upon information and belief, the CITY OF NEW YORK had implemented a policy for arrests during the RNC that assigned multiple arrestees to individual NYPD officers irrespective of the individual officer's observations, and in doing so causing falsely sworn statements to be submitted in criminal court, as used in the malicious prosecution of the plaintiff.

116.    In addition, upon information and belief, the frequency of false sworn statements in support of criminal complaints in connection with the RNC shows that the defendant CITY OF NEW YORK failed to train its police force to make truthful sworn statements in support of complaints, thus causing the malicious prosecution of plaintiff.

117.    Moreover, upon information and belief defendant CITY OF NEW YORK, acting through the NYPD, had and continues to have in effect a policy, practice, custom and usage

that with impunity violates the rights, strangely yet especially, of bicyclists in connection with

unprovoked arrests, extensive detentions and penalization by such means as the unjustified

removal of bicycles, found in the proximity of arrests, irrespective of whether or not the owner

of the bicycle was arrested or even a participant in the underlying event.  Such removal is done

by cutting often expensive bicycle locks with chain saws and/or by seizing bicycles illegally as

"arrest evidence," the latter being done in plaintiff's case.  In this context, we respectfully ask

this court to take judicial notice of the proceedings in the matter of Bray et all v. City of New

York et al, 04 Civ. 8255 (WHP)(RLE).

118.    Defendant CITY OF NEW YORK's mayor condoned and defended these policies

by publicly stating in late September 2004:  "They [the RNC protesters and, presumably, non-

protesters who were arrested] might as well just plead guilty and go on."

119.    Upon information and belief, as of April 2005, of more than 1,800 criminal cases

initiated by defendant CITY OF NEW YORK against individuals for alleged offenses during

the RNC, 408 cases were dismissed, 1,069 cases ended in adjournments in contemplation of

dismissal, 27 cases ended in acquittals at trial, 19 cases ended in guilty please to misdemeanors,

131 cases ended in guilty please for violations, 12 defendants were found guilty (11 of them for

violations only), in 4 cases no charges were filed, and the remaining cases were still open.

120.    This record shows that the defendant CITY OF NEW YORK used an

unconstitutional and unjustifiable policy of arrests and detention to prevent opponents of the

RNC as well as other people at or near pertinent events from the exercise of their constitutional

and statutory rights.

121.    Upon information and belief, the plaintiff was targeted for arrest and prosecution

in accordance with these policies, practices, customs and usage.  As a result, plaintiff was

arrested illegally and was maliciously prosecuted.

122.    As a direct and proximate result of the CITY OF NEW YORK's wrongful policies, practices, customs and/or usages complained of herein, plaintiff was deprived of his liberty, subjected to great humiliation, and otherwise damaged and injured.

123.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

124.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without

any risk of impediment.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

125.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

126.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

127.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees and of not ensuring that those fingerprints and other personal information were either destroyed or returned upon dismissal of charges against RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

128.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

129.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

130.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

131.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the

NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

132.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit statute to people walking on the sidewalk; (c) enforcement of the unconstitutional Disorderly Conduct statute, Penal Law section 240.20(5) (obstructing pedestrian traffic); (d) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (e) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

133.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and was otherwise damaged and injured.

### FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

134.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

135.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

136.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

137.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiff to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

138.    These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

139.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

**Deleted:** CAUSES OF ACTION¶
**FIRST CLAIM:  FALSE ARREST AND IMPRISONMENT ¶**
**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983¶**
¶
<#> Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.¶
<#>  The conduct and actions of defendants JOHN DOE and KEGHAM JARJOKIAN, acting under color of law, in falsely arresting plaintiff were done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and were designed to and did cause specific and serious physical and emotional pain and suffering in violation of plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.¶
<#>As a result of the foregoing, plaintiff was subject to great physical and emotional pain and suffering, and was otherwise damaged and injured.¶
**SECOND CLAIM:  MALICIOUS PROSECUTION¶**
**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983¶**
¶
<#> Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.¶
<#>  The conduct and actions of defendants JOHN DOE and KEGHAM JARJOKIAN, acting under color of law, in maliciously prosecuting plaintiff and, with respect to defendant KEGHAM JARJOKIAN, in falsely swearing to a criminal court complaint, were done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, were done without lawful justification or reason, and were designed to and did cause specific and serious emotional pain and suffering in violation of plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.¶
<#>  As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great humiliation, emotional pain and suffering, and was otherwise damaged and injured.¶
 **85.   At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had polici** ... [1]

costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

140.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

141.   The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASSI, DOES and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiff pursuant to the state common law doctrine of respondeat superior.

142.   The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

143.   As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**SIXTH CLAIM**

**ASSAULT AND BATTERY**

144.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

145.    By the actions described above, defendants did inflict assault and battery upon plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

146.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**SEVENTH CLAIM**

**FALSE ARREST and FALSE IMPRISONMENT**

147.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

148.    By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

149.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**EIGHTH CLAIM**

**MALICIOUS PROSECUTION**

150.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

151.    By the actions described above, defendants maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

152.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**NINTH CLAIM**

**INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

153.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

154.    By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

155.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**TENTH CLAIM**

**ABUSE OF PROCESS**

156.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

157.    By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

158.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**ELEVENTH CLAIM**

**VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY**

159.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

160.    By the actions described above, defendants violated the free speech and assembly rights of plaintiff and retaliated against plaintiff for the exercise of his rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury

and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

161.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

162.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

163.    By the actions described above, defendants violated the right of plaintiff to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

164.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

### NEGLIGENCE

165.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

166.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law

rights as guaranteed by the laws and Constitution of the State of New York.

167.   As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

168.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

169.   Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiff.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

170.   As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FIFTEENTH CLAIM

## FUTURE MEDICAL EXPENSES

171.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

172.   During his detention at Pier 57, plaintiff was exposed to hazardous materials.  As a result of this exposure, plaintiff reasonably anticipates consequential damages in the form of future expenses for medical monitoring and testing.

173.   As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### SIXTEENTH CLAIM

### PRIMA FACIE TORT

174.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

175.   Defendants, without excuse or justification, and intending to inflict harm upon plaintiff by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiff, to wit, the confinement and processing of plaintiff through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

176.   As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### SEVENTEENTH CLAIM

### VIOLATION OF NEW YORK STATE CRIMINAL PROCEDURE LAW

### §§ 160.10 AND 160.50

177.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

178.   By the actions described above, defendants violated plaintiff's rights under New York State Criminal Procedure Law §§ 160.10 and 160.50 by fingerprinting them without any

right or authority to do so, and failing to request or ensure that the fingerprints and other personal information were destroyed or returned upon dismissal of the criminal charges against plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

179. As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, the plaintiff demands the following relief jointly and severally against all of the defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable.

Dated:        New York, New York
              August 29, 2007


                              /S/
              JEFFREY A. ROTHMAN, Esq.
              (JR-0398)
              315 Broadway, Suite 200
              New York, New York 10007
              (212) 227-2980
              Attorney for Plaintiff

Deleted: FOURTH CLAIM: MALICIOUS PROSECUTION¶
(State Law Claim)¶
¶
 Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.¶
By the actions described above, the individual defendants JOHN DOE and KEGHAM JARJOKIAN maliciously prosecuted plaintiff, subjecting him to great indignity and humiliation, pain and distress of mind and body, preventing him from attending to his usual business, and injuring his good name and reputation.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.¶
As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great humiliation, and was otherwise damaged and injured.¶
FIFTH CLAIM: FALSE ARREST AND IMPRISONMENT¶
Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.¶
 By the actions described above, the individual defendants falsely arrested plaintiff without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants was the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and the Constitution of the State of New York.¶
As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great humiliation, and was otherwise damaged and injured.¶
SIXTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS¶
(State Law Claim)¶
¶
Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.¶
By the actions described above, the individual defendants engaged in extreme and outrageous conduct, conduct intolerable in a civilized society that is based on the rule of law, which intentionally caused severe emotional distress to plaintiff.  The acts and conduct of the defendants was the direct and proximate cause of injury and damage to the plaintiff and  ... [2]

39

| Page 30: [1] Deleted | Jeff Rothman | 8/28/2007 9:44 PM |

## CAUSES OF ACTION

# FIRST CLAIM:  FALSE ARREST AND IMPRISONMENT

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

1. Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

2.  The conduct and actions of defendants JOHN DOE and KEGHAM JARJOKIAN, acting under color of law, in falsely arresting plaintiff were done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and were designed to and did cause specific and serious physical and emotional pain and suffering in violation of plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

3.As a result of the foregoing, plaintiff was subject to great physical and emotional pain and suffering, and was otherwise damaged and injured.

# SECOND CLAIM:  MALICIOUS PROSECUTION

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

4. Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

5.  The conduct and actions of defendants JOHN DOE and KEGHAM JARJOKIAN, acting under color of law, in maliciously prosecuting plaintiff and, with respect to defendant KEGHAM JARJOKIAN, in falsely swearing to a criminal court complaint,

were done intentionally, maliciously, with a deliberate indifference and/or with a reckless

disregard for the natural and probable consequences of his acts, were done without lawful

justification or reason, and were designed to and did cause specific and serious emotional

pain and suffering in violation of plaintiff's rights as guaranteed under 42 U.S.C. §1983,

and the Fourth and Fourteenth Amendments to the United States Constitution.

6.   As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great

humiliation, emotional pain and suffering, and was otherwise damaged and injured.


      85.     At all times material to this complaint, defendant THE CITY OF NEW
YORK, acting through its police department, and through the individual defendants, had
policies, practices, customs, and usages of THIRD CLAIM:  MUNICIPAL LIABILITY
7.Plaintiff incorporates by reference the allegations set forth in each preceding paragraph

as if fully set forth herein.

| Page 39: [2] Deleted | Jeff Rothman | 8/28/2007 8:09 PM |
| --- | --- | --- |

# FOURTH CLAIM:  MALICIOUS PROSECUTION

## (State Law Claim)


**87. Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.**

**88.By the actions described above, the individual defendants JOHN DOE and KEGHAM JARJOKIAN maliciously prosecuted plaintiff, subjecting him to great indignity and humiliation, pain and distress of mind and body, preventing him from attending to his usual business, and injuring his good name and reputation. The acts and conduct of the defendants were the direct**

and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

89. As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great humiliation, and was otherwise damaged and injured.

## FIFTH CLAIM: FALSE ARREST AND IMPRISONMENT

90. Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

91. By the actions described above, the individual defendants falsely arrested plaintiff without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants was the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and the Constitution of the State of New York.

92. As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great humiliation, and was otherwise damaged and injured.

## SIXTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(State Law Claim)

93. Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

94. By the actions described above, the individual defendants engaged in extreme and outrageous conduct, conduct intolerable in a civilized society that is based on the rule of law, which intentionally caused severe emotional distress to plaintiff. The acts and conduct of the defendants was the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

95. As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great humiliation, and was otherwise damaged and injured.

**SEVENTH CLAIM: NEGLIGENT HIRING, SCREENING AND SUPERVISION**

**(State Law Claim)**

96. Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

97. The defendant CITY OF NEW YORK negligently hired, screened, retained, supervised and trained the individual defendants herein.

98. The acts and conduct of the defendants was the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

99. As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great humiliation, and was otherwise damaged and injured.

**EIGHTH CLAIM: RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS**

**(State Law Claim)**

100. Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

101. The conduct of the individual defendants alleged herein occurred while they were on duty and in uniform, and in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents, officers, servants and employees of the defendant CITY OF NEW YORK, and as result the defendant CITY OF NEW YORK is liable to plaintiff pursuant to the state common law doctrine of *respondeat superior*.

**WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:**

a.     Compensatory damages in the amount to be determined by a jury;

b.     Punitive damages in an amount to be determined by a jury;

**c.    The convening and empanelling of a jury to consider the merits of the claims herein;**

**d.    Costs and interest and attorney's fees;**

**e.    Such other and further relief as this Court may deem appropriate and equitable,**

**including injunctive and declaratory relief as may be required in the interest of justice.**

**Dated:        New York, New York**

**August 26, 2005**

_____

**UDO DRESCHER**

**Phone: (646) 283-7885**

**Plaintiff**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UDO DRESCHER,                                           )
                                                        )
                            Plaintiff,                  )
                                                        )
       -against-                                        )          **FIRST AMENDED COMPLAINT**
                                                        )
THE CITY OF NEW YORK; MICHAEL                           )
BLOOMBERG, Mayor of the City of New York;               )          **05 Civ. 7541 (KMK)(JCF)**
RAYMOND KELLY, New York City Police                     )
Commissioner; STEPHEN HAMMERMAN,                        )          **ECF CASE**
Former Deputy Commissioner for Legal Matters,           )
New York City Police Department; DAVID                  )          **JURY TRIAL DEMANDED**
COHEN, Deputy Commissioner for Intelligence,            )
New York City Police Department; THOMAS                 )
DOEPFNER, Assistant Deputy Commissioner for             )
Legal Matters, New York City Police Department;         )
NYPD LIEUTENANT DANIEL ALBANO; NYPD                     )
DEPUTY INSPECTOR KERRY SWEET, NYPD                      )
Legal Bureau Executive Officer; NYPD Legal              )
Bureau Senior Counsel RUBY MARIN-JORDAN                 )
NYPD LEGAL BUREAU SUPERVISOR(S) AT                      )
PIER 57; JOSEPH  ESPOSITO, Chief of the New             )
York Police Department; THOMAS GRAHAM,                  )
Commander, Disorder Control Unit, New York City         )
Police Department; JACK MCMANUS, Assistant              )
Chief, New York City Police Department; BRUCE           )
SMOLKA, former Commander, Patrol Borough                )
Manhattan South, New York City Police                   )
Department; TERENCE MONAHAN, Assistant                  )
Chief of the Bronx Borough Command; JOHN J.             )
COLGAN, Assistant Chief, New York City Police           )
Department; CAPTAIN JOSEPH DOWLING;                     )
NEW YORK CITY POLICE OFFICER KEGHAM                     )
JARJOKIAN, Shield No. 1638; NEW YORK CITY               )
POLICE OFFICER; NEW YORK CITY POLICE                    )
OFFICER GEORGE SHANNON, SHIELD NO.                      )
06542; JOHN DOE WHITE SHIRT SUPERVISOR                  )
WHO ORDERED THE ARREST OF UDO                           )
DRESCHER; JOHN DOES; RICHARD ROES;                      )
HUDSON RIVER PARK TRUST,                                )
                                                        )
                            Defendants.                 )

------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiff UDO DRESCHER seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.  The plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. §1983 and §1988, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is conferred upon this Court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(3) and (4), this being an action seeking redress for the violation of plaintiff's constitutional and civil rights.

3.      Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. §1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

4.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).  Plaintiff was arrested, subsequently confined and prosecuted in the Southern District of New York.

**JURY TRIAL DEMANDED**

5.      Plaintiff demands a trial by jury on each and every one of his claims pleaded herein.

**NOTICE OF CLAIM**

6.      Plaintiff timely filed a Notice of Claim with the Comptroller of the defendant CITY OF NEW YORK on November 24, 2004, within 90 days of the incidents complained of herein. More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.      Defendant CITY OF NEW YORK assigned claim number 2004PI026552 to plaintiff's claim.

8.      This action has been commenced within one year and ninety days of the date of occurrence of events giving rise to this Complaint.

**PARTIES**

9.      Plaintiff UDO DRESCHER is a resident of the State of New York.

10.     Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

11.     Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation,

implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

12. Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

13. STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

14. DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

15. THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

16. NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

17. NYPD DEPUTY INSPECTOR KERRY SWEET, is and was at all times relevant herein a

Deputy Inspector in and the Executive Officer of the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

18.     RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in her official capacity.

19     NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. They are sued individually and in his official capacity.

20.     Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

21.     Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

22.     Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

23.     Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

24.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

25.     Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

26.     Defendants DOWLING, JARJOKIAN, SHANNON, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and JOHN DOES, are and were at all

times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants DOWLING, JARJOKIAN, SHANNON, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and JOHN DOES are sued individually and in their official capacity.

27.     Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of police officers under their command. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the

performance of their lawful functions in the course of their duties.  Defendants BLOOMBERG,

KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN,

ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, JOHN

DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and RICHARD

ROES are sued individually and in their official capacity.

28.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks

incidental to the maintenance and use of its structures and the employment of its employees as

said risk attaches to the public consumers of the services provided by the HUDSON RIVER

PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON

RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted

THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National

Convention (RNC).  Said officials are and were at all times relevant herein acting under color of

state law in the course and scope of their duties and functions as officials of defendant HUDSON

RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority

vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.

## STATEMENT OF FACTS

29.    Plaintiff is and was, since his admission to the bar of the State of New York in

1992, an attorney in good standing.

30.     Concerned about potential confrontations between demonstrators and the police during the 2004 Republican National Convention (RNC), Plaintiff volunteered to serve as a "legal observer" after he was made aware of a search for trained legal professionals conducted by an organization called the National Lawyers Guild.

31.     Legal observers are unpaid volunteers whose role it is to record arrests and document police activity during events at which arrests are possible or likely.

32.     After an initial training in the aspects and proper conduct of a legal observer, plaintiff served in that role for multiple events on August 27 and 28, 2004.  During some of these events he observed and documented a variety of arrests, including a mass-arrest.  Some of the events observed by the plaintiff ended without confrontation and arrests.

33.     On August 29, 2004, the plaintiff volunteered as legal observer for the third day in a row on occasion of a bicycle ride that commenced at Union Square in Manhattan.

34.     Approximately six legal observers who, given the nature of the event, were riding bicycles themselves, were assigned to that event.

35.     Because of the number of participants the legal observers were positioned at different sections of the bicycle ride.  The plaintiff took a position near the front.

36.     The ride proceeded uneventfully at first.  At 14th Street, a uniformed, on information and belief of the rank of Lieutenant or higher, uniformed member of the NYPD in a police vehicle hand-signaled to the bicycle riders to continue the ride up on 6th Avenue.

37.     Shortly thereafter, near Herald Square, the riders passed through an area of heavy (car) traffic that, unrelated to the ride, blocked at least one intersection.

38.     As the ride continued north on Sixth Avenue, at approximately 38th Street, unidentified men in civil clothing on motorized scooters abruptly and rather aggressively drove

through the group of bicyclists, passing them both left and right, until they reached the front of the ride, where they placed their scooters perpendicular across the street in front of the bicyclists, who were waiting for the light to change from red to green.

39.     When the light changed, the bicyclists continued to ride north on 6th Avenue.

40.     The attempts by the unidentified scooter-drivers to block the bicyclists were repeated once or twice more and created chaos among the bicycle riders.

41.     Up to this point, the ride had proceeded peacefully and in an orderly fashion.

42.     The plaintiff had seen these scooter-drivers during the previous two days at other events, during which he had acted as legal observer, and knew them from their appearance and *modus operandi* to be undercover police officers initiating arrests.

43.     The people riding the scooters did not identify themselves nor was any order given to disperse or discontinue the bicycle ride.

44.     When the plaintiff reached the intersection of Sixth Avenue and 41st Street, he stopped his bicycle on the eastern curb of 6th Avenue at the northeastern corner of the intersection.

45.     He noticed a continuous line of uniformed police officers on foot one block further north at the intersection of 6th Avenue and 42nd Street, blocking off Sixth Avenue in its entirety from west to east.

46.     As Sixth Avenue is a one-way roadway running north but was blocked off by the NYPD at the next intersection, the only way to continue the bicycle ride was to turn west on 41st Street, which itself is a one-way street running in east-west direction.

47.     Accompanied by the wailing of sirens, marked and unmarked police vehicles and numerous police officers both in uniform and civil clothing began to spread out into and throughout the intersection, arresting bicyclists in and near that intersection, wrestling and knocking some of

them to the ground so as to cause physical injuries, including fractures.

48.     NYPD officers used pepper spray or a similar irritating substance against some bicyclists even in the absence of resistance.

49.     All this was done in a manner disproportionate to the peaceful and, up to the NYPD's intervention orderly, conduct of those participating in the event.

50.     While the plaintiff observed the events in the intersection unfold from his location at the eastern curb of 6th Avenue, the plaintiff heard what sounded like the collision between a bicycle and what turned out to be an unmarked police van.

51.     The plaintiff further observed that officers jumped out of the vehicle apparently to apprehend a bicyclist who was lying on the ground.

52.     Mindful of his having volunteered as a legal observer and concerned that the bicyclist might have gotten injured as a result of the collision or might be dealt with overly aggressively by the arresting officers, the plaintiff ventured into the crosswalk to observe the situation.

53.     The plaintiff positioned himself south of the police vehicle, which was standing diagonally in a northeasterly direction, so that he would not obstruct any traffic, which by that time had ceased to flow anyway, nor the officers.

54.     After a few seconds, defendant JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER, a uniformed member of the NYPD wearing a white shirt and on information and belief of the rank of Lieutenant or higher, said to the plaintiff: "Out of the way, guy!"

55.     Holding his bicycle with one hand, the plaintiff attempted to follow that instruction and began to walk straight to nearest sidewalk on the west side of 6th Avenue and

stated: "I just want to get on the sidewalk."

56.    The officer, defendant JOHN DOE, then said to the plaintiff: "Get back on the sidewalk!"

57.    The plaintiff asked: "I'm in the middle of the street, which sidewalk do you want me to go to?"

58.    Instead of responding to that question and without any justifiable cause, defendant JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER then placed the plaintiff under arrest.

59.    That was at 12:03 p.m.

60.    Throughout the bicycle ride leading up to the arrest and at the time of his arrest the plaintiff was clearly and visibly identified as legal observer both by a bright, neon-green baseball cap inscribed in the front "Legal Observer, National Lawyers Guild" and by a green name tag inscribed "Drescher, Udo, Legal Observer RNC 2004 NYC, NLG," which he wore around his neck on the outside of his shirt.

61.    Immediately after placing the plaintiff under arrest, defendant JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER handed the plaintiff to defendant KEGHAM JARJOKIAN.

62.    Defendant JARJOKIAN was thereby assigned as Plaintiff's "arresting officer" by defendant JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER

63.    Defendant KEGHAM JARJOKIAN put plastic handcuffs tightly around the plaintiff's wrists, causing significant pain; took his picture; and instructed him to take a sitting position on the nearby curb at the west side of Sixth Avenue, ironically the place where plaintiff originally had tried to go to.

64.     Defendant KEGHAM JARJOKIAN also seized the plaintiff's bicycle as arrest evidence.

65.     The plaintiff was also subjected to humiliation, e.g. when about two minutes after the arrest defendant KEGHAM JARJOKIAN asked one of his colleagues, on information and belief a Police Officer named Adam Pieragostini, who was slowly driving by in a van filled with other officers, referring to the plaintiff:  "Adam, what should I do with this guy?" Whereupon the Officer Pieragostini answered:  "Go fuck him."

66.     Another NYPD officer who was sitting in the van stuck his tongue out at the plaintiff in an apparent act of mockery.

67.     After spending close to two hours at that intersection, during which time the plaintiff remained handcuffed very tightly behind his back and experienced great physical discomfort, the plaintiff was put in a police vehicle and, after some more waiting, still in very tight handcuffs that continued to cause significant pain and great physical discomfort, transported to Pier 57 with other arrestees.

68.     Pier 57 is owned by and/or under the control of defendant HRPT.

69.     Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

70.     On information and belief, all of the arrestees from 41ST and 6TH Avenue, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

71.     The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein.  There

were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier.  On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there.  During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

72.     Plaintiff was processed at Pier 57, and his arresting officer was instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiff's arrest.  On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

73.     Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

74.     At Pier 57 the plaintiff was repeatedly searched and held in deplorable conditions.

75.     At Pier 57 the plaintiff was kept with numerous other arrestees in holding cells

that consisted of chain-link fence topped with barbed wire.

76.    During that time, the plaintiff repeatedly asked to be allowed to speak to counsel, a request that was persistently denied by the NYPD.

77.    The detainees at Pier 57, including plaintiff, were further subjected to unreasonable delay in being processed and moved through the system. The City insisted on fingerprinting all RNC detainees in contravention of New York State Law, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court. Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 was not equipped with any fingerprinting machines. On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives. Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and thea screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork. Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street. All arrestees during the RNC were thereby held in

custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

78.    On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

79.    During his time in custody plaintiff was subjected to unreasonably tight and painful wrist restraints/handcuffs.

80.    After his detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiff during his transfer to and confinement at the Central Booking Facility at 100 Centre Street.

81    Around 7:30 pm, the plaintiff was transported, again in handcuffs, from Pier 57 to 100 Centre Street, where his mugshot was taken, where he was fingerprinted, and where he was repeatedly put in plastic handcuffs, metal handcuffs and even metal foot-chains, forced to march through the halls with four other arrestees like a chain gang.

82.    Frequent changes between various holding cells and the conditions in those cells, being overcrowded and hot, prevented him from sleeping.

83.    When the plaintiff met, dirty and over-tired, with a court-appointed lawyer for the first time around dawn the next morning, he was advised that he was being charged with Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, and Parading Without a Permit.

84.    Defendant KEGHAM JARJOKIAN falsely alleged in a criminal court complaint that he "observed the defendant [Drescher], intentionally cause a public inconvenience, annoyance, and alarm, by riding a bicycle in a roadway at [the intersection of West 41 Street

and Sixth Avenue], a public place, thereby obstructing vehicular traffic [and that he observed] defendant parading at said location with at least 15 other bicyclists without a permit from the police commissioner [and that he observed] a police barricade set-up (sic) on the west side of West 41 Street and said barricade consisted of approximately 10 police officers standing next to bicycles and scooters, which were lined tire-to-tire from the southwest corner to the northwest corner of West 41 Street [and that he observed] defendant riding his bicycle, among other bicyclists, turn left onto West 41 Street from Sixth Avenue into the aforementioned barricade set up in the roadway, requiring deponent and other police officers to block the roadway of West 41 Street with a police vehicle [and that he observed] that the defendant's aforementioned conduct prevented pedestrian traffic from traveling across Sixth Avenue and from traveling across West 41 Street."

85.     Defendant SHANNON was cited on Defendant JARJOKIAN's arrest paperwork as an informing officer.  Defendant JARJOKIAN's arrest paperwork states that he saw Plaintiff doing things that Plaintiff never did.

86.     Defendant DOWLING ordered the arrests of a large number of bicyclists nearby and the assignment of Defendant SHANNON as the informing officer for all of them, and was responsible, in whole or in part, for creating the conditions that led to the wrongful arrest of Plaintiff and the creation of the false charges lodged against him.

87.     The arraignment judge released the plaintiff on plaintiff's own recognizance from criminal court at approximately 8:15 a.m. on August 30, 2004, more than 20 hours after his arrest.

88.     Defendants KEGHAM JARJOKIAN and JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER, knowingly and intentionally arrested

plaintiff without a warrant and absent probable cause or other legal justification.

89.     The plaintiff was forced to attend court on multiple occasions between August 30 and December 8, 2004 to defend against the false criminal charges brought against him. Plaintiff was thereby deprived of his liberty and freedom of movement during those court appearances.

90.     On December 8, 2004, over three months after his arrest, plaintiff's criminal charges were dismissed in their entirety on the motion of the People, not inconsistent with the plaintiff's innocence.

91.     The conduct of the individual defendants in restraining, falsely arresting, falsely imprisoning and maliciously prosecuting plaintiff directly and proximately prevented plaintiff from exercising his right to free speech, deprived him of his liberty, and caused plaintiff serious physical and emotional injury, mental anguish, humiliation and embarrassment.

92.     The plaintiff had to undertake considerable effort and expense not only in defending the unfounded charges by hiring defense counsel and incurring other expenses but also in replacing and retaining his property that had been seized by defendants.

93.     The physical injuries the plaintiff sustained as a result of the individual defendants' conduct described herein included but were not limited to temporary nerve damage in plaintiff's wrists as a result of the overly tight handcuffing leading to pain and temporary numbness that lasted for weeks as well as, upon information and belief, exposure to harmful substances during the plaintiff's detention in Pier 57.

94.     The arrest and prosecution of plaintiff was without probable cause whatsoever, and was done maliciously, falsely and in bad faith.  The individual defendants acted with reckless and wanton disregard of the plaintiff's rights.

95.     Prior to, during, and after the RNC officials of the CITY OF NEW YORK

evinced through their statements and actions an attitude of contempt toward those who

demonstrated during the RNC, and toward those thought to be assisting or otherwise related to

them, including legal observers, anarchists, certain segments of the press, and the National

Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear

relative to the activities of demonstrators.

96.     Defendant COHEN prior to the RNC caused the NYPD to be engaged in

widespread surveillance of individuals and groups expected to be demonstrating during the RNC

period, and fostered and created a climate of hostility toward demonstrators, improperly

conflating them with civil disobedience and/or violence and/or violent anarchism and/or

terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program

formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees,

including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue

summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an

improperly long period of time.

97.     This  tone of hostility to demonstrators, and the resultant policies, customs, practices and

usages to punish and discourage dissent were further set by statements made by other high level City

Officials, including the Mayor and Police Commissioner, in the period leading up to and during the

RNC.  These statements portrayed those who chose to engage in political protest in the most negative

light.  This criminalization and/or demonization of people engaged in political protest was clearly

communicated to NYPD police officers and supervisors through the public statements by NYPD

officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York

City by "hard-core" and "dangerous" protestors.  This sentiment was reiterated, summarized and ratified

in the public statements of defendant BLOOMBERG in which he identified the plaintiff and those similarly situated as "terrorists" and "guilty" criminals.

98.    Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

99.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

100.    The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance, as well as other laws including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

101.    The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## <u>FIRST CLAIM</u>

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

102.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

103.    By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiff, and by subjecting plaintiff to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, JARJOKIAN, SHANNON, JOHN DOE WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

104.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

105.    The plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

106.    By failing to remedy the wrongs committed by their subordinates, and in failing

to properly train, screen, supervise, or discipline their subordinates, supervisory officers

BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET,

MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO,

GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, JOHN DOE

WHITE SHIRT SUPERVISOR WHO ARRESTED UDO DRESCHER and RICHARD ROES

caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and

the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth

amendments.

107.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

108.    The plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

109.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants had policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional

conduct alleged herein.

110.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of failing to properly train, screen, supervise, or discipline

employees and police officers, and of failing to inform the individual defendants' supervisors of

their need to train, screen, supervise or discipline said defendants.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged

herein.

111.    At all times relevant for this complaint, defendant CITY OF NEW YORK, acting

through the NYPD, had in effect a policy, practice, custom and usage that condoned and

fostered the unconstitutional conduct of the individual defendants, and were a direct and

proximate cause of the damages and injuries complained of herein.

112.    The planned protests and events around the RNC were anticipated to involve a

large number of people.

113.    Upon information and belief, defendant CITY OF NEW YORK planned and

implemented a policy, practice, custom and usage of controlling the RNC protests and events

and the participants of these events, that was designed and did preempt lawful activities by

illegally arresting protesters as well as bystanders and legal observers and needlessly detaining

them for excessively long periods. The purpose of these proactive arrests and protracted periods

of detention was to ensure that protesters could not resume the protests that were broken up by

the illegal arrests, or start or return to other protests critical of the RNC.  Upon information and

belief, defendant CITY OF NEW YORK consciously disregarded the illegality and unconstitutionality of said arrests and detentions in order to facilitate and promote the CITY OF NEW YORK's desired appeasement of the mayor's own Republican Party and its members, including the president of the United States.

114.    In addition, the CITY OF NEW YORK has had in effect a policy, practice, custom and usage that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

115.    For example, upon information and belief, the CITY OF NEW YORK had implemented a policy for arrests during the RNC that assigned multiple arrestees to individual NYPD officers irrespective of the individual officer's observations, and in doing so causing falsely sworn statements to be submitted in criminal court, as used in the malicious prosecution of the plaintiff.

116.    In addition, upon information and belief, the frequency of false sworn statements in support of criminal complaints in connection with the RNC shows that the defendant CITY OF NEW YORK failed to train its police force to make truthful sworn statements in support of complaints, thus causing the malicious prosecution of plaintiff.

117.    Moreover, upon information and belief defendant CITY OF NEW YORK, acting through the NYPD, had and continues to have in effect a policy, practice, custom and usage that with impunity violates the rights, strangely yet especially, of bicyclists in connection with unprovoked arrests, extensive detentions and penalization by such means as the unjustified removal of bicycles, found in the proximity of arrests, irrespective of whether or not the owner of the bicycle was arrested or even a participant in the underlying event.  Such removal is done

by cutting often expensive bicycle locks with chain saws and/or by seizing bicycles illegally as "arrest evidence," the latter being done in plaintiff's case.  In this context, we respectfully ask this court to take judicial notice of the proceedings in the matter of Bray et all v. City of New York et al, 04 Civ. 8255 (WHP)(RLE).

118.    Defendant CITY OF NEW YORK's mayor condoned and defended these policies by publicly stating in late September 2004:  "They [the RNC protesters and, presumably, non-protesters who were arrested] might as well just plead guilty and go on."

119.    Upon information and belief, as of April 2005, of more than 1,800 criminal cases initiated by defendant CITY OF NEW YORK against individuals for alleged offenses during the RNC, 408 cases were dismissed, 1,069 cases ended in adjournments in contemplation of dismissal, 27 cases ended in acquittals at trial, 19 cases ended in guilty please to misdemeanors, 131 cases ended in guilty please for violations, 12 defendants were found guilty (11 of them for violations only), in 4 cases no charges were filed, and the remaining cases were still open.

120.    This record shows that the defendant CITY OF NEW YORK used an unconstitutional and unjustifiable policy of arrests and detention to prevent opponents of the RNC as well as other people at or near pertinent events from the exercise of their constitutional and statutory rights.

121.    Upon information and belief, the plaintiff was targeted for arrest and prosecution in accordance with these policies, practices, customs and usage.  As a result, plaintiff was arrested illegally and was maliciously prosecuted.

122.    As a direct and proximate result of the CITY OF NEW YORK's wrongful policies, practices, customs and/or usages complained of herein, plaintiff was deprived of his liberty, subjected to great humiliation, and otherwise damaged and injured.

123.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

124.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

125.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

126.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

127.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees and of not ensuring that those fingerprints and other personal information were either destroyed or returned upon dismissal of charges against RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

128.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

129.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

130.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

131.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

132.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct. Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit statute to people walking on the sidewalk; (c) enforcement of the unconstitutional Disorderly Conduct statute, Penal Law section 240.20(5) (obstructing pedestrian traffic); (d) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (e) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

133.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

134.    The plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

135.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

136.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

137.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiff to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

138.    These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

139.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## **FIFTH CLAIM**

### **RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS**

140.    The plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

141.    The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN,

DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASSI,

DOES and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and

during the course and scope of their duties and functions as New York City police officers,

and/or while they were acting as agents and employees of defendant THE CITY OF NEW

YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiff pursuant

to the state common law doctrine of respondeat superior.

142.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST,

alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK

concerning the improper and dangerous use of Pier 57, occurred in and during the course and

scope of their duties and functions as employees and officials of the HUDSON RIVER PARK

TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiff

pursuant to the state common law doctrine of respondeat superior.

143.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

## ASSAULT AND BATTERY

144.    The plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

145.    By the actions described above, defendants did inflict assault and battery upon plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

146.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

147.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

148.    By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

149.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### MALICIOUS PROSECUTION

150.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

151.    By the actions described above, defendants maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

152.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

## INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

153.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

154.    By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

155.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

## ABUSE OF PROCESS

156.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

157.    By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

158.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

159.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

160.    By the actions described above, defendants violated the free speech and assembly rights of plaintiff and retaliated against plaintiff for the exercise of his rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

161.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

162.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

163.    By the actions described above, defendants violated the right of plaintiff to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

164.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

### NEGLIGENCE

165.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

166.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

167.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

168.     The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

169.     Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiff.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

170.     As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FIFTEENTH CLAIM

### FUTURE MEDICAL EXPENSES

171.     The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

172.     During his detention at Pier 57, plaintiff was exposed to hazardous materials.  As a result of this exposure, plaintiff reasonably anticipates consequential damages in the form of future expenses for medical monitoring and testing.

173.     As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SIXTEENTH CLAIM

**PRIMA FACIE TORT**

174.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

175.    Defendants, without excuse or justification, and intending to inflict harm upon plaintiff by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiff, to wit, the confinement and processing of plaintiff through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

176.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SEVENTEENTH CLAIM

**VIOLATION OF NEW YORK STATE CRIMINAL PROCEDURE LAW**

**§§ 160.10 AND 160.50**

177.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

178.    By the actions described above, defendants violated plaintiff's rights under New York State Criminal Procedure Law §§ 160.10 and 160.50 by fingerprinting them without any right or authority to do so, and failing to request or ensure that the fingerprints and other personal information were destroyed or returned upon dismissal of the criminal charges against plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the

laws and Constitution of the State of New York.

179.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.


WHEREFORE, the plaintiff demands the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empanelling of a jury to consider the merits of the claims herein;

d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:        New York, New York
              August 29, 2007


_____/S/_____
JEFFREY A. ROTHMAN, Esq.
(JR-0398)
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980
Attorney for Plaintiff