UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | |
|---|---|
| JEFFREY PHILLIPS, et al. | **05 Civ. 7624 (KMK)(JCF)** |
| SARAH COBURN, et al. | **05 Civ. 7623 (KMK) (JCF)** |
| UDO DRESCHER, | **05 Civ. 7541 (KMK)(JCF)** |

                  Plaintiffs,          **ECF CASE**

   -against-

THE CITY OF NEW YORK, et al.

                  Defendants.
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE
TO FILE A FIRST AMENDED COMPLAINT IN THE <u>PHILLIPS, ET AL.</u> CASE, TO
FILE A SECOND AMENDED COMPLAINT IN THE <u>COBURN, ET AL.</u> CASE, AND TO
FILE A FIRST AMENDED COMPLAINT IN THE <u>DRESCHER</u> CASE**


JEFFREY A. ROTHMAN, Esq. (JR-0398)
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980
Attorney for Plaintiffs


August 29, 2007

## INTRODUCTION and PROCEDURAL HISTORY

The present motion to amend involves three civil rights cases that arose on August 29, 2004, during the 2004 Republican National Convention ("RNC"), stemming from the wrongful arrests, detention, processing, and prosecution of Plaintiffs and related claims concerning the conditions and length of confinement.

The original Complaint in the <u>Phillips</u> and <u>Coburn</u> actions were filed on August 29, 2005. A First Amended complaint was filed in the <u>Coburn</u> action on November 28, 2005, which added an additional plaintiff and that plaintiff's assigned arresting officer.

The <u>Drescher</u> action was filed by the plaintiff, who at that time was proceeding pro se, on November 26, 2005. I entered my appearance as counsel for Mr. Drescher in the <u>Drescher</u> action on December 8, 2006.

The Complaint in <u>Phillips</u> and the Complaint and First Amended Complaint in <u>Coburn</u> named as defendants the City of New York, along with those police officers who were assigned as the "arresting officers" for each of the plaintiffs (who processed each plaintiff and filled out each plaintiffs' arrest paperwork, and who signed the Criminal Court Complaints that were lodged against each plaintiff), John Does (unknown members of the NYPD who participated directly in ordering or effecting the arrests, detention, processing, and prosecution of Plaintiffs), Richard Roes (those supervisors who, based on their supervisory role caused or were a significant contributing factor in causing the arrests, detention, processing, and prosecution of Plaintiffs), and the Hudson River Park Trust (the entity that leased Pier 57, the facility that was used as the primary detention facility during the RNC, to the NYPD).

Mr. Drescher's pro se complaint followed much the same format, naming the City of New

1

York, his assigned "arresting officer" Jarjokian, and a specific John Doe unidentified defendant (who was the white shirted supervisory-level member of the NYPD who ordered his arrest). Mr. Drescher's pro se complaint did not name the Hudson River Park Trust as a defendant.

The majority of discovery in this case has been conducted between late 2005 and the present, with the greatest intensity of activity having been in the past few months after the Court imposed a firm discovery cut-off and So Ordered a very condensed deposition schedule.

On Thursday, August 23, 2007, I forwarded by email to counsel for defendants proposed Second Amended Complaints in two of the other RNC cases for which I am counsel (Bastidas, et al. v. City of New York, et al., 05 Civ. 7670 (KMK)(JCF); and Xu (previously Carney) v. City of New York, et al., 05 Civ. 7672 (KMK)(JCF)), which cases relate to RNC arrests made on August 31, 2004, seeking consent to add additional defendants and claims. I informed counsel for defendants that the addition of the policy defendants and the elaboration of the general claims applicable to the RNC policing operations were uniform in both cases (and would be across all the other proposed amended complaints I would seek consent for prior to the passing of the respective statutes of limitations). I informed counsel for defendants that the only distinction in the amendments would be concerning particular on-site defendants who I will be adding who were particular to each case. I then sent the proposed First Amended Complaint in Phillips and the proposed Second Amended Complaint in Coburn to counsel for defendants on August 27, 2007, and yesterday sent them the proposed First Amended Complaint in Drescher.

As defendants have not responded, plaintiffs bring this motion for leave to file the proposed amendments. Attached as **Exhibit A** to the Declaration of Jeffrey Rothman is the proposed First Amended Complaint in Phillips (a version with red "track changes" is included

along with final version for the Court's convenience).  Attached as **Exhibit B** to the Declaration of Jeffrey Rothman is the proposed Second Amended Complaint in <u>Coburn </u>(a version with red "track changes" is included along with final version for the Court's convenience).  Attached as **Exhibit C** to the Declaration of Jeffrey Rothman is the proposed First Amended Complaint in <u>Drescher </u>(a version with red "track changes" is included along with final version for the Court's convenience).

All of the proposed amendments add the following identical individual policymaking / supervisory defendants:

- Mayor Michael Bloomberg;

- Police Commissioner Raymond Kelly;

- The former NYPD Deputy Commissioner for Legal Matters Stephen Hammerman (who held that position during the RNC);

- The NYPD Deputy Commissioner for Intelligence David Cohen;

- The NYPD Assistant Deputy Commissioner for Legal Matters Thomas Doepfner;

- A Lieutenant in the NYPD's Legal Bureau named Daniel Albano (who was also a participant at mass arrest sites);

- the Executive Officer of  the NYPD's Legal Bureau NYPD named Deputy Inspector Kerry Sweet;

- A senior counsel in the NYPD's Legal Bureau named Ruby Marin-Jordan;

- As yet unknown NYPD Legal Bureau Supervisor(s) At Pier 57;

- The NYPD's Chief of department named Joseph Esposito;

- The head of the NYPD's Disorder Control Unit named Deputy Chief Thomas Graham;

- A retired NYPD Assistant Chief who had overall responsibility for the RNC

policing operations named John McManus;

- a retired NYPD Assistant Chief who was during the time of the RNC in charge of Patrol Borough Manhattan South named Bruce Smolka;

- An Assistant Chief within the NYPD who was in charge of the NYPD's RNC Mobile Field Forces named Terrance Monahan;

- An Assistant Chief within the NYPD who was in charge of the NYPD's operations at Pier 57 named John Colgan.

The prior incarnations of Plaintiffs' complaints did not advance claims against individual RNC policymakers in their individual capacities. Rather, it sought to hold the City liable for their actions in their official capacity as policymakers. The importance of these individuals' roles, and the extent of malfeasance on the part of these individuals that would warrant punitive damages that are unavailable against the municipality, that has been adduced through discovery thus far impels plaintiffs to sue them in their individual capacities as well, and thus Plaintiffs seek to amend their complaints to add these individual defendants[1]. These individuals have been identified in discovery as responsible in whole and/or in part for the alleged violations of the plaintiffs' civil rights.

Plaintiffs also make more precise the following claims that were mentioned explicitly and/or alluded to in their prior complaints (and/or in the complaints of other RNC cases), in light of the evidence that has been developed to date: (1) a constitutional challenge to the defendants' admitted policy of fingerprinting all persons arrested in connection with the 2004 Republican National Convention ("RNC"), and a related specification of a state law claim pursuant to New

---

1 Some of these individuals may be found to not have been policymakers, but rather supervisors implementing policy, in which case it becomes of even greater importance to amend them into the complaints as individual defendants, as their acts in their official capacity in that circumstance would not automatically be considered the acts of the presently named City of New York.

York State Criminal Procedure Law §§ 160.10 and 160.50 for the fingerprinting and the failure to ensure that the forwarded prints and other personal information of RNC arrestees were returned or destroyed by other law enforcement agencies / entities; (2) a constitutional challenge to the alleged policy and/or practice of instituting a system of false sworn statements by police officers to attempt to justify unlawful and indiscriminate mass arrests; (3) a facial and as-applied challenge to the enforcement during the RNC of N.Y.C. Admin. Code § 10-110 (Parading Without a Permit) and subsection 5 of N.Y. Penal Law § 240.20 (Disorderly Conduct)(concerning obstruction of vehicular and pedestrian traffic); (5) an as-applied challenge to the enforcement during the RNC of subsection 6 of N.Y. Penal Law § 240.20 (Disorderly Conduct)(concerning refusal to disperse upon a lawful order to do so); (6) further claims under 42 U.S.C. §1983 for individual participatory and supervisory liability against those who have been discovered in the course of discovery.[2]

---

[2]Additional organizational and format changes have been made in the proposed amendments, including, amplified factual allegations based on information learned in discovery since the first amended complaint was filed.

Plaintiffs seek to file the amendments because facts which support the addition of the new defendants have become known through discovery conducted since the last incarnation of the complaints were filed -- discovery which is still continuing rapidly apace.[3]  The proposed amendments are not prejudicial to defendants.  Plaintiffs' prior complaint incarnations clearly delineated the acts for which plaintiffs are suing and made obvious, through the use of John Doe and Richard Roe defendants, that plaintiffs expected to identify additional defendants involved in those acts as discovery proceeded.  And with the exception of the allegations against the NYPD Legal Bureau, all of the newly pled claims in the proposed amendments were previously asserted either in the prior incarnations of the complaints in these actions or in other RNC-related actions, with which this case has been consolidated for purposes of discovery.  Regarding the Legal Bureau's role during the RNC, the parties have been litigating plaintiffs' allegations in that regard for nearly ten months – i.e., since plaintiffs in the RNC putative class action MacNamara, et al., v. City of New York, et al., 04 Civ. 9216 (KMK)(JCF) filed their motion to compel documents as to which defendants had asserted the attorney-client privilege on October 30, 2006.

The original complaint in MacNamara named the following individual policymaking / supervisory defendants who, as described above, Plaintiffs now seek to amend into these actions as defendants:  Mayor Michael Bloomberg, Police Commissioner Raymond Kelly, Chief of Department Joseph Esposito, Commander of the NYPD Disorder Control Unit Thomas Graham, Assistant Chief Bruce Smolka, Assistant Chief Terrence Monahan, Assistant Chief John Colgan.

---

[3]As the Court is well aware, defense witness depositions in the consolidated RNC actions have been so-ordered at a rate of several per week continuing through the middle of November 2007.

This Memorandum of Law references (and is based in large part upon and uses the same language) the Memorandum Of Law In Support Of Motion For Leave To File Second Amended Class Action Complaint, and its accompanying exhibits, that was filed with this court on August 27, 2007 in the RNC putative class action MacNamara, et al., v. City of New York, et al., 04 Civ. 9216 (KMK)(JCF). I am indebted to its authors, Clare Norins, Jonathan Moore, and Rachel Kleinman, for their fine and hard work that inures to my clients' benefit herein.

For the reasons given herein and in the MacNamara motion papers in support of the Motion For Leave To File Second Amended Class Action Complaint in that action, and its accompanying exhibits, and as justice requires, plaintiffs respectfully request leave to file the proposed amendments to the pleadings attached as **Exhibits A, B, and C** to the Declaration of Jeffrey Rothman.

## ARGUMENT

A.    LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires."

> The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, see Conley v. Gibson, 355 U.S. 41, 47-48 (1957), and 'mere technicalities' should not prevent cases from being decided on the merits, see Foman v. Davis, 371 U.S. 178 (1962). See also 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1471 (2d ed.1990).

Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 283 (2d Cir. 2000). Accord McKenna v. Incorporated Village of Northport, 2007 WL 2071603, at *3 (E.D.N.Y. July 13, 2007); Spiegler v. City of New York, 2006 WL 2587990, *2 (S.D.N.Y. Sept. 8, 2006).

7

Leave to amend a complaint falls within the sound discretion of the trial court.  Zenith Radio

Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); O'Hara v. Weeks Marine, Inc., 294

F.3d 55, 70 (2d Cir. 2002).  However, amendments as a general matter are favored in order "to

facilitate a proper decision on the merits."  Foman, 371 U.S. at 182 (quoting Conley, 355 U.S. at

48).

      The courts have articulated four primary reasons why a court would not otherwise permit

an amendment to a complaint under Rule 15.  These include undue delay, bad faith, prejudice to

the opposing party, and futility of the amendment.  See Foman, 371 U.S. at 182; Monahan, 214

at 283.  As none of these factors are present in the instant case, the Court should therefore grant

plaintiff's motion to amend the complaint.  See Monahan, 214 at 283.

B.     ADDITION OF NEW INDIVIDUAL DEFENDANTS

      As noted above and explained further below, Plaintiffs seek to add the following new

individual defendants uniformly across these three actions.  There is no prejudice to defendants

as the identity of these individuals and the role they played in affecting arrests and detentions

during the RNC, and in designing and implementing the policies and practices challenged in the

prior incarnations of plaintiffs' complaints and motion practice concerning the NYPD Legal

Bureau, were at all times available to defendants.  Given that discovery in this action is massive

and on-going, there has been no undue delay or bad faith by plaintiffs in electing to file these

amendments at the close of the statute of limitations rather than making multiple, incremental

motions to amend along the way.  Finally, there is no undue hardship presented to the new

defendants plaintiffs propose to add since they have all either been deposed or noticed for a

deposition, and since, upon information and belief, the City of New York, through its

Corporation Counsel, will represent all newly added defendants.

    **1.**    **Policy & Practice Defendants**

       In addition to those policy and practice defendants who Plaintiffs wish to add who are, as noted above, already defendants in the <u>MacNamara</u> action (Mayor Michael Bloomberg, Police Commissioner Raymond Kelly, Chief of Department Joseph Esposito, Commander of the NYPD Disorder Control Unit Thomas Graham, Assistant Chief Bruce Smolka, Assistant Chief Terrence Monahan, Assistant Chief John Colgan), plaintiffs join with MacNamara counsel in wishing to add the following policy and practice defendants:

       Plaintiffs seek leave to add **Jack McManus** as a defendant.  McManus is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period.  <u>See</u> Exhibits B and F- testimony of former NYPD Assistant Chief Patrick Devlin and Defendants' witness list in the <u>Schiller</u> and <u>Dinler</u> RNC cases - to Declaration of Clare Norins in support of the <u>MacNamara</u> Motion For Leave To File Second Amended Class Action Complaint.  He is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the arrest and detention-related policies, practices and/or customs complained of in plaintiffs' pleadings.

       Plaintiffs seek leave to add **David Cohen** as a defendant.  Cohen is the Deputy Commissioner for Intelligence for the New York City Police Department.  He supervised investigations and gathering of intelligence leading up to the RNC, the results of which he interpreted and presented to Police Commissioner Ray Kelly for the purpose of formulating how the City of New York would be policed during the week of the RNC.  Exhibits C and F- David

Cohen declaration and Defendants' witness list in the <u>Schiller</u> and <u>Dinler</u> RNC cases - to Declaration of Clare Norins in support of the <u>MacNamara</u> Motion For Leave To File Second Amended Class Action Complaint. Defendants have represented that this intelligence justified the NYPD's no-summons and blanket fingerprinting policies for RNC arrestees.  Cohen is therefore responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of in plaintiffs' pleadings.

> ### 2.      Legal Bureau Claim and Defendants

The proposed amendments include the allegation that the NYPD Legal Bureau spearheaded and/or participated in the systematic creation of perjured sworn statements by police officers in an attempt to justify the hundreds of unlawful arrests made during the week of the RNC.  The evidentiary basis for this allegation of systemic perjury was set forth in the <u>MacNamara</u> plaintiffs' October 30, 2006 motion to compel production of documents and January 30, 2007 reply (including the 1/30/07 letter brief submitted by Michael Spiegel, Esq.), wherein plaintiffs challenged defendants' assertion of the attorney-client privilege pursuant to the crime-fraud exception.  The evidentiary basis was further articulated in plaintiffs' Rule 72 objections [Docket Entry No. 135] to this Court's March 14, 2007 decision  [Docket Entry No. 133]. Further evidence of the Legal Bureau's role in creating falsified sworn statements has been presented to the Court as it becomes available.

**Stephen Hammerman** was Deputy Commissioner for Legal Matters of the New York City Police Department at the time of the RNC, in which capacity he oversaw the operations of the NYPD Legal Bureau.  <u>See</u> Exhibit D - testimony of Hammerman - to Declaration of Clare Norins in support of the <u>MacNamara</u> Motion For Leave To File Second Amended Class Action

Complaint.  He is therefore ultimately responsible for the actions and/or omissions committed by the Legal Bureau in connection with the RNC.  Hammerman also personally set a tone of lawlessness and contempt within the NYPD  for individual rights during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

**Thomas Doepfner**, Assistant Deputy Commissioner for Legal Matters, coordinated and supervised members of the NYPD Legal Bureau assigned to work during the RNC, including at the Post Arrest Staging Site at Pier 57 where Legal Bureau attorneys assisted arresting officers with the preparation and falsification of their arrest narratives and memo book entries.  See Exhibit E - testimony of NYPD Sergeant Cai - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.  Moreover, Deputy Commissioner Hammerman has testified that he delegated his authority to Doepfner with regard to operations of the Legal Bureau during the RNC.  See Exhibit D - testimony of Hammerman - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.

**Ruby Marin-Jordan**, Special Counsel to the New York City Police Department, was also present at Pier 57 during the RNC.  See Exhibit D - testimony of Hammerman - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.  Defendants represent that she possesses personal knowledge on the subject of the Legal Bureau's role at Pier 57.  See Exhibit D - Defendants' witness list - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.  Additionally, defendants have represented that Marin-

Jordan, together with Assistant Deputy Commissioner Doepfner, was in charge of NYPD Legal Bureau attorneys at Pier 57, which is where Legal Bureau attorneys assisted arresting officers with the preparation and, at least in some instances, falsification of their arrest narratives and memo book entries.

**Deputy Inspector Kerry Sweet** was Assistant Deputy Commissioner Doepfner**'s** executive officer during the RNC**,** at which time Sweet was of the rank of captain.  Sweet prepared legal training materials for the RNC and also conducted meetings for members of the NYPD Legal Bureau regarding the duties and functions of the Legal Bureau during the RNC. See Exhibits D, F, and G - testimony of Hammerman; Defendants' witness list; RNC Legal Guidelines - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.  Plaintiffs are including Deputy Inspector Sweet as a defendant because of his policymaking role / supervisory liability for the unlawful conduct of NYPD Legal Bureau attorneys both as relates to training and as relates to actions taken by Legal Bureau attorneys at Pier 57.

   **3.    New Defendants particular to the Phillips action, concerning arrests at 46th Street and Broadway on August 29, 2004.**

Plaintiffs seek to add Chief James O'Neill, who was the incident commander who ordered that the mass arrests at 46th Street and Broadway in front of the Marriott Hotel on the evening of August 29, 2004 take place, in which all the Phillips plaintiffs were arrested.  Chief O'Neill has testified at his deposition that he made the arrest decision at that location.  See **Exhibit A** to Rothman declaration - Phillips proposed First Amended Complaint at ¶ 40.

Plaintiffs also seek to add Captain Robert Bonifati, who was the head of the Queens North Task Force at the time who made the decision as to how to implement Chief O'Neill's

arrest decision.  He testified at his deposition that he decided when and how to seal all the people under a scaffold on the corner of 46th Street and Broadway with an orange net, within which all the Phillips plaintiffs were arrested.  See **Exhibit A** to Rothman declaration - Phillips proposed First Amended Complaint at ¶ 41.

Plaintiffs also seek to add Lieutenant William Cooke, who worked under Captain Bonifati within the Queens North Task Force.  He testified at his deposition that he was the one who assigned the line officers under his command (including each of Plaintiffs' assigned "arresting officers") five of the arrested individuals as arrestees.  Plaintiffs allege that he was remiss in their supervisory duties, including failing to ensure that assigned arresting officers under his command had individualized knowledge that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that his subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.  See **Exhibit A** to Rothman declaration - Phillips proposed First Amended Complaint at ¶ 42.

**4.     New Defendants particular to the Coburn action, concerning arrests at 45th Street and 8th Avenue on August 29, 2004.**

As Chief O'Neill was preparing to make the mass arrests at 46th Street and Broadway in which the Phillips plaintiffs were arrested, a number of people exited the Times Square area and walked to the West to leave.  Some of them, including all three of the Plaintiffs in the Coburn action, did so in order to get away from the hostile conditions that Plaintiffs allege that Chief O'Neill was responsible in whole or in part for creating.  See **Exhibit B** to Rothman declaration - Coburn proposed Second Amended Complaint at ¶¶ 35 and 36.  Chief Monahan has testified at

his deposition that he ordered Chief O'Neill to cease the use of the NYPD's mounted units for crowd control purposes in Times Square, as he thought it was dangerous given the conditions. Plaintiffs allege that he was also a significant contributing factor to the hostile attitude that drove the Coburn plaintiffs from the Times Square area.

Chief Monahan - who, as explained above, I wish to also add as a defendant in all RNC cases for which I am counsel because of his role as commander over all the NYPD's RNC Mobile Field Forces, which made the vast bulk of arrests during the RNC period - testified that he followed a group of these people away from Times Square one block to the West to 8th Avenue, then one block to the South until he ordered that they be arrested as part of a mass arrest. This mass arrest took place at 45th Street and 8th Avenue next to the Milford Plaza Hotel. Plaintiffs have alleged that this arrest decision was made without probable cause. See **Exhibit B** to Rothman declaration - Coburn proposed Second Amended Complaint at ¶ 46.

For these reasons Plaintiffs wish to add these location-specific claims against Chiefs Monahan and O'Neill.

### 4. New Defendants particular to the Drescher action, concerning arrests at 37th Street and 7th Avenue and at 41st Street and 6th Avenue on August 29, 2004.

Earlier on August 29th, at approximately noon, there had been a large number of bicyclists who were riding their bicycles in midtown Manhattan. Captain Joseph Dowling has testified at his deposition that he ordered the mass arrests of bicyclists shortly after noon at 37th Street and 7th Avenue, after he saw them riding and managed to follow them a short distance himself. He consulted with Police Officer George Shannon at the scene of the arrests at 37th and 7th, and decided that Officer Shannon should be the "informing officer" for all of the scores of

arrests that were made there, who would provide the information that would purportedly justify all of the arrests that would be assigned to the many assigned "arresting officers" who took arrests at that location.    See **Exhibit C** to Rothman declaration - <u>Drescher</u> proposed First Amended Complaint at ¶ 86.  Officer Shannon's deposition testimony confirmed that he was given this task by Captain Dowling.

Officer Shannon is cited on Plaintiff Udo Drescher's arrest paperwork as the source of information that accuses Mr. Drescher of doing things that he did not do.  See **Exhibit C** to Rothman declaration - <u>Drescher</u> proposed First Amended Complaint at ¶ 85.

Plaintiff Drescher's arrest took place as part of the sweep arrests of all bicyclists in the area that was set off by Captain Dowling, and Captain Dowling is responsible, in whole or in part, for creating the conditions that led to the wrongful arrest of Plaintiff and the creation of the false charges lodged against him.  See **Exhibit C** to Rothman declaration - <u>Drescher</u> proposed First Amended Complaint at ¶ 86.

For these reasons Plaintiffs wish to add these location-specific claims against Captain Dowling and Police Officer Shannon.[4]

For the reasons stated above, and because justice so requires, plaintiffs respectfully request that the Court grant leave to amend the pleadings in these actions to add the foregoing individual defendants.

C.    <u>ADDITION OF NEW CLAIMS</u>

---

4  See also page 15 of <u>MacNamara</u> Memorandum of Law in support of Motion for leave to Amend, seeking leave to add Captain Dowling as a defendant for the mass arrests he ordered on 37th Street between Seventh Avenue and Broadway on August 29, 2004, including the unlawful arrest of putative class representative Carolyne Ali-Khan.

As stated above, the proposed amended pleadings elaborate upon and state with greater specificity the following claims that were referenced in the prior versions of plaintiffs' complaints that have been filed, in light of the evidence that has been developed to date, to wit: (1) a constitutional challenge to the defendants' admitted policy of fingerprinting all persons arrested in connection with the 2004 Republican National Convention ("RNC"), and a related specification of a state law claim pursuant to New York State Criminal Procedure Law §§ 160.10 and 160.50 for the fingerprinting and the failure to ensure that the forwarded prints and other personal information of RNC arrestees were returned or destroyed by other law enforcement agencies / entities; (2) a constitutional challenge to the alleged policy and/or practice of instituting a system of false sworn statements by police officers to attempt to justify unlawful and indiscriminate mass arrests; (3) a facial and as-applied challenge to the enforcement during the RNC of N.Y.C. Admin. Code § 10-110 (Parading Without a Permit) and subsection 5 of N.Y. Penal Law § 240.20 (Disorderly Conduct)(concerning obstruction of vehicular and pedestrian traffic); (5) an as-applied challenge to the enforcement during the RNC of subsection 6 of N.Y. Penal Law § 240.20 (Disorderly Conduct)(concerning refusal to disperse upon a lawful order to do so); (6) further claims under 42 U.S.C. §1983 for individual participatory and supervisory liability against those who have been discovered in the course of discovery.

No prejudice can be shown by defendants with regard to the above proposed amendments since, under Federal Rule of Civil Procedure 15(b), pleadings may be amended to conform to evidence adduced at trial "at any time, even after judgment." Plaintiffs merely seek the opportunity to add these claims at this point, in order to more clearly define the scope of the litigation. Justice and public policy also require that plaintiff be permitted to add this claim in

16

order to vindicate the purposes 42 U.S.C. § 1983, which recognizes "the need ... to hold responsible public officials exercising their power in a wholly unjustified manner[.]"  Poe, 282 F.3d at 131.

       1.      **Constitutional Challenges**

There is no prejudice to defendants in amending the pleadings to assert challenges to the NYPD's fingerprinting policy during the RNC, the alleged system of creating false sworn statements by police officers, the enforcement of N.Y.C. Admin. Code § 10-110 (Parading Without a Permit), the enforcement of N.Y. Penal Law § 240.20 (Disorderly Conduct) and the failure of the NYPD to request the retrieval, destruction and/or expungement of fingerprint, arrest records and/or other personal data of plaintiffs that they had forwarded to other law enforcement agencies.

Excepting the alleged falsification of sworn statements (which had, in fact, been presciently pled by then pro se plaintiff Udo Drescher in his filed pro se complaint:  See **Exhibit C** to Rothman declaration - Drescher proposed First Amended Complaint at ¶ 116 "In addition, upon information and belief, the frequency of false sworn statements in support of criminal complaints in connection with the RNC shows that the defendant CITY OF NEW YORK failed to train its police force to make truthful sworn statements in support of complaints, thus causing the malicious prosecution of plaintiff."), the basic conduct underlying the newly pled claims were contained in plaintiffs' prior pleadings and those of the MacNamara case [see, e.g., MacNamara First Amended Complaint at ¶ 63 ("defendants implemented arrest procedures . . . These included . . . the fingerprinting all of those arrested, even for minor offenses for which fingerprinting is unnecessary"), ¶ 67 ("fingerprinting everyone arrested in violation of state

17

law"), ¶ 69 ("[m]ost of the more than 1,800 people who were arrested during the period just before and during the RNC were arrested for minor violations, such as disorderly conduct and parading without a permit . . . defendants' decision to fingerprint all those arrested during the RNC . . . resulted in . . . the improper entry of fingerprints into government databases"), ¶ 83 ("defendants . . . implemented policies, practices or customs of indiscriminately arresting without just or probable cause large groups of people who were peacefully assembled and who were either participating in, were observing or were in the vicinity of demonstrations and protests"), ¶ 84 ("This mass arrest policy was a refinement of the tactic . . . of using mass arrests to unlawfully suppress protected First Amendment conduct")].

Further, complaints in other RNC-related actions, with which this case has been consolidated for purposes of discovery, have long included all of these claims plaintiffs seek to add, thus providing notice to defendants that these issues would be part of the RNC litigation. See, e.g., 10/7/04 Complaint in Dinler v. City of New York, 04-CV-7921 (KMK)(JCF) at ¶ 72 and p. 22 (challenging blanket fingerprinting policy and seeking injunction ordering the return or expungement of fingerprints); 3/15/06 Complaint in Kyne v. Wolfowitz, 06-CV-2041 (KMK) (JCF) at ¶¶ 171, 530, 622 and p. 125 (alleging defendants had a policy/practice of ordering, encouraging and/or facilitating the swearing out of false accusatory instruments; seeking declaration that Parading Without a Permit statute is unconstitutional both facially and as applied).

The previously filed complaints in Phillips and Coburn also already have made facial and as-applied challenges to Parading Without a Permit and Disorderly Conduct statutes. See **Exhibit A** to Rothman declaration - Phillips proposed First Amended Complaint with track

changes at ¶¶ 68 and 88; **Exhibit B** to Rothman declaration - <u>Coburn</u> proposed First Amended Complaint with track changes at ¶¶ 69 and 89.  See also, First Amended Complaint in <u>Carney v. City of New York</u>, 05-CV-7672 (KMK) (JCF) at ¶¶ 55 & 67, which is also an RNC case for which I am counsel.

Finally, as noted above, no prejudice can be shown by defendants since Rule 15(b) permits  pleadings to be amended to conform to the evidence "at any time, even after judgment" and "the court . . . shall [allow amendment of the pleadings] freely when the presentation of the merits of the action will be subserved thereby."  Plaintiffs seek the opportunity to add these claims at this point, in order to more clearly define the scope of the litigation.

<u>**CONCLUSION**</u>

Plaintiffs should be permitted to obtain "a proper decision on the merits" of their claims. <u>Conley v. Gibson</u>, 355 U.S. 41, 48, 78 S.Ct. 99, 103 (1957).  No undue delay, bad faith, or prejudice to the opposing parties would result from allowing the proposed amendments to the complaint.  For the reasons stated above, and because justice so requires, plaintiffs respectfully request that the Court grant Plaintiffs leave to file a First Amended Complaint in the <u>Phillips, et al.</u> case, to file a Second Amended Complaint in the <u>Coburn, et al.</u> case, and to file a First Amended Complaint in the <u>Drescher</u> case, together with such further and additional relief as the Court deems appropriate.

Dated:      New York, New York
                August 29, 2007

                                                  _____/S/_____
                                                  JEFFREY A. ROTHMAN, Esq.
                                                  (JR-0398)
                                                  315 Broadway, Suite 200
                                                  New York, New York 10007
                                                  (212) 227-2980

                                                  Attorney for plaintiffs

20