# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
DEIRDRE MACNAMARA, et al.,
individually and on behalf of those similarly situated,                    04-CV-9216 (RJS) (JCF)

                                        Plaintiffs,                    ECF Case

        -against-

THE CITY OF NEW YORK, a municipal entity, et al.,

                                        Defendants.
-------------------------------------------------------------------x

TARASIK ABDELL, et al.,                                    05-CV-8453 (RJS) (JCF)

                                        Plaintiffs,                    ECF Case

        -against-

THE CITY OF NEW YORK, et al.,

                                        Defendants.
-------------------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT


                            Jonathan C. Moore (JM 6902)
                            Clare R. Norins (CN 2821)
                            BELDOCK LEVINE & HOFFMAN LLP
                            99 Park Avenue
                            New York, New York 10016
                            (212) 490-0400

                            *Attorneys for Plaintiffs and Putative Class Members*
                            *in MacNamara*

                            Alan Levine (AL 5297)
                            99 Hudson Street, 14th Floor
                            New York, New York 10013
                            (212) 739-7506


                            *Attorney for Plaintiffs in Abdell*

November 15, 2007

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

DEIRDRE MACNAMARA, et al.,
individually and on behalf of those similarly situated,

04-CV-9216 (RJS) (JCF)

                    Plaintiffs,

ECF Case

    -against-

THE CITY OF NEW YORK, a municipal entity, et al.,

                    Defendants.

-------------------------------------------------------------------x

TARASIK ABDELL, et al.,

05-CV-8453 (RJS) (JCF)

                    Plaintiffs,

ECF Case

    -against-

THE CITY OF NEW YORK, et al.,

                    Defendants.

-------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT

Jonathan C. Moore (JM 6902)
Clare R. Norins (CN 2821)
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiffs and Putative Class Members in MacNamara*

Alan Levine (AL 5297)
99 Hudson Street, 14th Floor
New York, New York 10013
(212) 739-7506

*Attorney for Plaintiffs in Abdell*

November 15, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................... ii

PRELIMINARY STATEMENT ................................................ 1

ARGUMENT ............................................................. 2

    I.     Deputy Commissioner David Cohen Was Personally Involved in the Formulation of the Unconstitutional RNC Arrest and Detention Policies at Issue in These Cases ............................................................. 2

    II.    Amendments Adding Constitutional Challenges to the Parading and Disorderly Conduct Statutes Accurately Frame the Scope of the Litigation .............. 6

        A.     Facial Challenge to N.Y.C. Admin. Code § 10-110 ................. 7

        B.     As-Applied Challenge to N.Y.C. Admin. Code § 10-110 ............. 9

        C.     As-Applied Challenge to New York Penal Law §§ 240.20(5) & (6) .... 13

            1.     New York Penal Law § 240.20(5) - Blocking Traffic ......... 13

            2.     New York Penal Law § 240.20(6) - Failure to Disperse ....... 15

        D.     Facial Challenge to Penal Law § 240.20(5) ...................... 17

CONCLUSION ........................................................... 19

## TABLE OF AUTHORITIES

### CASES

American-Arab Anti-Discrimination Committee v. City of Dearborn, . . . . . . . . . . . . . . . . . . . 7, 8
418 F.3d 600 (6th Cir. 2005)

Barham v. Ramsey, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
434 F.3d 565 (D.C. Cir. 2006)

Boos v. Barry, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.8
485 U.S. 312 (1988)

Cantwell v. Connecticut, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
310 U.S. 296 (1940)

Colon v. Coughlin, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
58 F.3d 865 (2d Cir. 1995)

Connally v. General Construction Co., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18
269 U. S. 385 (1926)

Cox v. Louisiana, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14 n.13, 17
379 U.S. 536 (1965)

Cox v. State of New Hampshire, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
312 U.S. 569 (1941)

Dellums v. Powell, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
566 F.2d 167 (D.C. Cir. 1977)

Dunton v. Suffolk County, State of N.Y., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
729 F.2d 903 (2nd Cir. 1984)

Deegan v. City of Ithaca, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13
444 F.3d 135 (2d Cir. 2006)

Edwards v. South Carolina, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14 n.13
372 U.S. 229 (1963)

Five Borough Bicycle Club v. City of New York, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
483 F.Supp.2d 351 (S.D.N.Y. 2007)

Frisby v. Schultz, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
487 U.S. 474 (1988).

Hobbs v. County of Westchester, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
397 F.3d 133 (2d Cir. 2005)

Iqbal v. Hasty, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
490 F.3d 143 (2d Cir. 2007)

Jones v. Parmley, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.8, 13, 15, 16
465 F.3d 46 (2d Cir. 2006)

Lanzetta v. New Jersey, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
306 U.S. 451 (1939)

Mastrovincenzo v. City of New York, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
435 F.3d 78 (2d Cir. 2006)

NAACP v. Claiborne Hardware Co., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
458 U.S. 886 (1982)

Neef v. City of New York, et al., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
07-CV-7677 (RJS) (JCF) (S.D.N.Y.)

Olivieri v. Ward, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
801 F.2d 602 (2d Cir. 1986)

Owen v. City of Independence, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
445 U.S. 622 (1980)

Papachristou v. City of Jacksonville, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
405 U.S. 156 (1972)

People v. Barrett, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 8 n.7, 11, 13
13 Misc.3d 929 N.Y.S.2d 416 (Crim. Ct., N.Y. County 2006)

People v. Bezjak, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11
11 Misc.3d 424 N.Y.S.2d 829 (Crim. Ct., N.Y. County 2006)

People v. Jones, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
13 Misc.3d 94 N.Y.S.2d 403 (N.Y.Sup.App.Term 2006)

People v. Pearl, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
66 Misc.2d 502 N.Y.S.2d 986 (1st Dept. 1971)

Perry Educ. Ass'n v. Perry Local Educators' Ass'n, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.9
460 U.S. 37 (1983)

Santa Monica Food Not Bombs v. City of Santa Monica, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
450 F.3d 1022 (9th Cir. 2006)

Silkwood Associates, Ltd. v. Junior Gallery Group, Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.1
991 U.S. Dist. LEXIS 4179 (S.D.N.Y. Apr. 1, 1999)

Smith v. California, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19
361 U.S. 147 (1960)

Springdale Educ. Ass'n v. Springdale School Dist., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5
133 F.3d 649 (8th Cir. 1998)

Thomas v. Humfield, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
32 F.3d 566 1994 WL 442484 (5th Cir. Aug. 2, 1994)

Tobis v. City of New York, et al., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Case No. 07-CV-7741

United States v. Harris, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
347 U.S. 612 (1954)

Ward v. Rock Against Racism, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15
491 U.S. 781 (1989)

## STATUTES

N.Y.C. Administrative Code § 10-110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
New York Penal Law § 240.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
N.Y. Penal Law § 240.20(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
N.Y. Penal Law § 240.20(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

## RULES

Fed.R.Civ.P. 15(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 1 n.2, 19
Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## OTHER AUTHORITIES

38 R.C.N.Y. § 19-02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8 n.6, 9

## NEWSPAPER ARTICLES

Judith Miller, When Activists Are Terrorists,
The Wall Street Journal, May 3, 2007 at A17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 3 n.4

## PRELIMINARY STATEMENT

Defendants' opposition to the motions to amend in <u>MacNamara</u> and <u>Abdell</u> are premised on arguments of futility and prejudice, neither of which defendants can establish here. The new defendants and claims included in the proposed amended complaints adhere to the original theories of the actions set forth in the initial pleadings, discovery of which is nearing completion.[1] Constitutional challenges to the parading and disorderly conduct statutes are asserted in RNC complaints filed as long as two years ago which are consolidated with <u>MacNamara</u> and <u>Abdell</u> for purposes of discovery. Moreover, these same claims are asserted in new, but timely, RNC complaints filed within the last few months which are also consolidated with the instant actions for discovery. Thus, defendants' have no legitimate claim of prejudice. Defendants' arguments on the merits of the proposed amendments are erroneous and certainly not dispositive. Consistent with Federal Rule of Civil Procedure 15(b), plaintiffs seek to amend their complaints in order to more clearly define the scope of the litigation for purposes of summary judgment and trial.[2]

---

[1] Thus, the instant motions to amend are wholly distinguishable from the motion in <u>Silkwood Associates, Ltd. v. Junior Gallery Group, Inc.</u>, 991 U.S. Dist. LEXIS 4179 (S.D.N.Y. Apr. 1, 1999), a case cited by defendants, where the court found that the proposed amendment would "significantly revise the nature of the case and plaintiff's theories of recovery." 991 U.S. Dist. LEXIS 4179, at *1-2. There, the plaintiff had initially sued three defendants for a claim for commissions but at the end of discovery sought to add five new parties and thirteen new tort claims, including one invoking the federal RICO statute. <u>See id.</u>

[2] Rule 15(b) permits pleadings to be amended to conform to the evidence "at any time, even after judgment" and states "the court . . . shall [allow amendment of the pleadings] freely when the presentation of the merits of the action will be subserved thereby."

1

## ARGUMENT

**I.   Deputy Commissioner David Cohen Was Personally Involved in the Formulation of the Unconstitutional RNC Arrest and Detention Policies at Issue in These Cases**

Defendants make the incredible claim that plaintiffs have failed to allege any personal involvement by NYPD Deputy Commissioner of Intelligence David Cohen. (Defts' Memorandum of Law in Partial Opposition to Plaintiffs' Motions to File Amended Complaints ("Defts' Opp.") at 7-8). To the contrary, as stated at pages 5-6 of the MacNamara plaintiffs' memorandum of law in support of filing an amended complaint, Deputy Commissioner Cohen supervised surveillance investigations and the gathering of intelligence information leading up to the RNC, the results of which he interpreted and presented to Police Commissioner Ray Kelly for the purpose of formulating how the City of New York would be policed during the week of the RNC. (See 8/27/07 Declaration of Clare Norins in Support of Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint ("Norins Decl."), Exhibit C - May 2, 2007 Cohen Decl. at ¶¶ 1, 4-6, 8-11).[3]

Defendants have represented both in this litigation and to the public that this intelligence -

---

[3]In his May 2, 2007 Declaration, Cohen goes even further: "I have overall responsibility for the operation of the NYPD Intelligence Division, including the gathering and analysis of information about potential criminal activity and terrorism." (Decl. at ¶ 1). Cohen states that in connection with the RNC, "[t]he role of the Intelligence Division was to collect information to learn about the extent and nature of expected demonstration activity for purposes of police resource allocation and to identify and assess any threat to the safety and security of the City presented by individuals or groups . . .." (Decl. at ¶ 6). Cohen goes on to say that the Intelligence Division gathered information about potential unlawful activity and that "[i]t was my responsibility to analyze that information and to brief the RNC Executive Committee (consisting of Police Commissioner Kelly . . .) concerning the nature and scope of expected demonstration activity and the threats to the security of the City during the RNC." Cohen avers that he met with the RNC Executive Committee regularly from October of 2003 through June of 2004 and with increasing frequency in July and August of 2004 as the RNC approached. During those meetings he provided the Committee with reports that were prepared by his Division on a weekly and, at times, more frequent basis. (Decl. at ¶¶ 8-11).

2

- which Cohen analyzed, interpreted and presented to, among others, Police Commissioner

Raymond Kelly -- justified the NYPD's no-summons and blanket fingerprinting policies for

people, including the plaintiffs, arrested at demonstrations during the RNC. (See Judith Miller,

When Activists Are Terrorists, The Wall Street Journal, May 3, 2007 at A17 [4], attached as

Exhibit A to 9/15/07 Declaration of Clare Norins in Further Support of Plaintiffs' Motion for

Leave to File Second Amended Class Action Complaint ("Norins Reply Decl.")). However, as

explicitly pled in the proposed Third Amended Complaint in Abdell, plaintiffs contend that

Cohen grossly misinformed the RNC Executive Committee, including Commissioner Kelly, of

the security threat posed by people and groups who were planning to protest during the RNC. He

did so, in part, by conflating constitutionally protected activities with violence and terrorism.

(See Abdell Proposed Third Amended Complaint at ¶ 19).[5]  Cohen's supervision of the

---

[4]According to Ms. Miller's article :

Mr. Cohen said, and his intelligence files suggest, that the police were concerned
about four categories of protestors: . . . [including] individuals with criminal
histories . . . and people who had previously tried to hide or alter their identifies
when arrested. It was the need to ascertain true identifies, he said, that led to the
decision to fingerprint those arrested. This, in turn, required the police to arrest
demonstrators who were violating the law, rather than give them summonses,
since people are fingerprinted only after an arrest.

Ms. Miller's article, in preparation for which she was granted interviews with not only
Cohen but also Police Commissioner Kelly and NYPD press spokesman Paul J. Browne,
was intended to serve as a counterpoint to Jim Dwyer's article that had appeared in the
New York Times in late March 2007 and had criticized the NYPD's intelligence
activities leading up to the RNC.

[5]MacNamara's proposed Second Amended Class Action Complaint names Cohen as one
of the individual defendants responsible for "the creation, implementation, promulgation and
enforcement of the policies, practices and/or customs complained of herein." (Second Amended
Class Action Complaint at ¶ 39). Plaintiffs do not believe that notice pleading under
Fed.R.Civ.P. 8 requires the complaint to include an any more explicit explanation of Cohen's
alleged liability. Should the Court disagree, plaintiffs are happy to expand paragraph 39 to
include the above description of Cohen's involvement in the formulation of the challenged

3

Intelligence Division's gathering of data in preparation for the RNC and his manipulated or

distorted presentation of that intelligence data to the RNC Executive Committee culminated in

the formulation and adoption of the no-summons and blanket fingerprinting policies. Cohen

therefore personally contributed to the formulation of those allegedly unconstitutional policies,

making him a proper defendant in these actions. See Colon v. Coughlin, 58 F.3d 865, 873 (2d

Cir. 1995) (for purposes of a Section 1983 claim, personal involvement may be established by

evidence that "the defendant created a policy or custom under which unconstitutional practices

occurred, or allowed the continuance of such a policy or custom"); see, e.g., Iqbal v. Hasty, 490

F.3d 143, 175-76 (2d Cir. 2007) (denying motion to dismiss former Attorney General Ashcroft

and FBI Director Mueller for claims of religious and racial discrimination against Arab Muslim

men detained after 9/11 and rejecting defendants' argument that plaintiff had failed to allege their

personal involvement; court found it "likel[y] that these senior officials would have concerned

themselves with the formulation and implementation of policies dealing with the confinement of

those arrested on federal charges in the New York City area and designated 'of high interest' in

the aftermath of 9/11"); Thomas v. Humfield, 32 F.3d 566, 1994 WL 442484, at *6 (5th Cir. Aug.

2, 1994) ("[Plaintiff] can hold the defendants liable without showing their personal involvement

in the actual confrontations [with plaintiff] if he can demonstrate they took some action to create

or implement the discriminatory policy giving rise to the constitutional infraction.").

Assuming, arguendo, that Cohen may not be a "final policymaker" does not diminish his

direct involvement in, and thus his individual liability for, the creation of unconstitutional arrest

and arrest processing policies, notwithstanding that those policies were ultimately endorsed by

Commissioner Kelly. See Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 653

---

policies, the details of which the defendants are all too familiar with.

4

(8ᵗʰ Cir. 1998) ("a supervisor may be subject to individual liability under section 1983 if he directly participates in a constitutional violation. This is true regardless of whether the supervisor is an authorized policymaker for purposes of municipal liability. In other words, [the defendant] need not be a final policymaker for the district in order to be subject to individual liability for actions that he himself performed.") (internal quotations and citations omitted).

Finally, defendants' argument that "plaintiffs' claims regarding any 'misrepresentation' of information are not supported by the record"(Defts' Opp. at 12) is no more than that -- an argument -- and provides no basis for barring plaintiffs from naming Cohen as a defendant. Perhaps the most important and contested issue in this RNC litigation is whether the intelligence information was sufficient to justify the NYPD's refusal to issues summons and insistence on across-the-board fingerprinting of more than 1800 people accused of low level offenses simply because they were arrested at or in the vicinity of a demonstration. Moreover, much of the intelligence information that will eventually be part of the record has yet to be produced to plaintiffs since defendants are appealing the Order requiring that they produce certain intelligence documents. Thus, not only is the record incomplete at this point, but the question of whether the record supports the claim that Deputy Commissioner Cohen misrepresented the intelligence data to the RNC Executive Committee remains a hotly disputed question of fact.

Defendants' public policy argument is similarly unavailing. Defendants propose to shield Cohen from liability because his duties were only to collect and present information. (See Defts' Opp. at 13). But plaintiffs allege that Cohen went beyond merely collecting and presenting data and instead manipulated and exaggerated the contents of the data to support an agenda of hostility towards persons engaging in First Amendment activity. In other words, plaintiffs charge that Cohen overreached his prescribed duties to the detriment of the

5

Constitutional rights of the plaintiffs and putative plaintiff class. The far greater threat to public policy would be to cloak Cohen's alleged misconduct with immunity.

Thus, for the reasons stated above and in plaintiffs' moving papers, plaintiffs respectfully request that the Court grant leave to amend to add Deputy Commissioner David Cohen as an individual defendant.

## II.    Amendments Adding Constitutional Challenges to the Parading and Disorderly Conduct Statutes Accurately Frame the Scope of the Litigation

Defendants' objections to adding facial and as-applied challenges to the Parading Without a Permit and Disorderly Conduct statutes are wholly without merit. As set forth in the MacNamara plaintiffs' opening memorandum of law at pages 20-21, and in the Abdell opening memorandum of law at pages 11-12, RNC complaints filed as much as two years ago contained both facial and as-applied challenges to N.Y.C. Administrative Code § 10-110 (Parading Without a Permit) and New York Penal Law § 240.20 (Disorderly Conduct). (Contra Defts' Opp. at 14). Thus, defendants have long been aware that the constitutionality of these statutes would be an issue in this litigation, providing them ample opportunity to conduct whatever discovery they deemed necessary to defend those claims. (Contra Defts' Opp. at 16-17 - "the defendants are entitled to gather, analyze and compare [ ] data in order to defend against plaintiffs' new claims. Whether or not plaintiffs ever sought this information is not relevant, since the defendants are entitled to do so.").

In addition, several new RNC actions, which were timely filed within the last few months and consolidated for purposes of discovery with the existent RNC cases, also assert facial and as-applied challenges to both the Parading Without a Permit Statute and subsections (5) and (6) of the Disorderly Conduct statute. See, e.g., Complaint filed on 8/29/07 in Neef v. City of New York, et al., Case No. 07-CV-7677 (RJS) (JCF) at ¶¶ 111-121; Complaint filed on 8/30/07 in

Tobis v. City of New York, et al., Case No. 07-CV-7741 (RJS) (JCF) at ¶¶ 83-93. The fact that
defendants will have to defend those challenges in the context of both long-filed, existing cases
and the newly filed RNC cases undermines their argument that they would be prejudiced by an
amendment to add those same challenges in MacNamara and Abdell.

Beyond that, there is no prejudice in adding these legal claims given that there have been
no dispositive motions to date. Since, as explained below, these legal claims require no
additional fact discovery, their inclusion by these amendments imposes no burden upon
defendants beyond that which they would have faced were they asserted in the original
complaint.

We turn now to defendants' argument that the amendments are futile because the
constitutional claims they assert would be dismissed pursuant to Rule 12(b)(6). (See Defts' Opp.
at 2).

### A.    Facial Challenge to N.Y.C. Admin. Code § 10-110

Defendants complain that plaintiffs have not articulated with specificity how Section 10-
110 is facially unconstitutional or cited to any case law in support of the challenge. (Defts' Opp.
at 15). First, on its face, the statute impermissibly applies to small groups, rendering it overly
broad and not narrowly tailored. See People v. Barrett, 13 Misc.3d 929, 938-41, 821 N.Y.S.2d
416, 425-27 (Crim. Ct., N.Y. County 2006) (holding that the primary justification for requiring
individuals to obtain permits before engaging in parades and other forms of expressive speech is
the potential for disruption to the community but that justification disappears when individuals
gather in small groups) (citing, inter alia, Santa Monica Food Not Bombs v. City of Santa
Monica, 450 F.3d 1022, 1039 (9th Cir. 2006); American-Arab Anti-Discrimination Committee v.
City of Dearborn, 418 F.3d 600, 608 (6th Cir. 2005)). See also People v. Bezjak, 11 Misc.3d

424, 430-33, 812 N.Y.S.2d 829 (Crim. Ct., N.Y. County 2006) (Harris, J.) (finding Section 10-110 facially invalid because it applies to small groups).[6]

Second, N.Y.C. Admin. Code § 10-110 is facially invalid because it imposes strict liability. See Barrett, 13 Misc.3d at 941-44, 821 N.Y.S.2d at 427-29 (noting that courts strongly disfavor criminal statutes that impose strict liability and recognizing Section 10-110's chilling effect on First Amendment expression; "strict liability statutes that discourage the exercise of free speech are unconstitutional") (citing Smith v. California, 361 U.S. 147, 152-53 (1959));[7] Bezjak, 11 Misc.3d at 434 ("Another constitutional infirmity of the City's permit scheme as written is the absence of a requirement of mental culpability."); see, e.g., American-Arab Anti-Discrimination Committee, 418 F.3d at 611-12 (invalidating the city of Dearborn's parade permit ordinance in part on the grounds that its strict liability regime would chill the exercise of First Amendment rights of an individual who might want to join a parade or march).

Defendants' claim that any facial challenge to N.Y.C. Admin. Code § 10-110 is futile in light of Five Borough Bicycle Club v. City of New York, 483 F.Supp.2d 351 (S.D.N.Y. 2007) is

---

[6]In January 2007, in an attempt to remedy the overbreadth problem, the NYPD amended the Parade Regulations to define a "parade or procession" as "any procession or race which consists of a recognizable group of 50 or more pedestrians, vehicles, bicycles or other devices moved by human power." 38 R.C.N.Y. § 19-02. This new regulation took effect in February 2007. However, regardless of whether this amendment is sufficient to cure the facial overbreadth of the Parading Without a Permit statute, at the time of the 2004 RNC arrests, there was no such regulation in effect preventing the statute from being applied to small groups of less than 50. This gives rise to at least an as-applied challenge to Section 10-110, if not also a facial challenge to the statute as it existed at the time of the RNC.

[7]As Justice Gesmer pointed out, "the Parading Law would, for example, criminalize the conduct equally of the organizer of a parade who chose not to seek a permit, and the individual who joined a parade at the last minute, mistakenly believing that the event had a permit. Indeed, an individual would be criminally liable under the Parading Law even if he had been incorrectly informed by an event organizer that the event had a permit . . .." Barrett, 13 Misc.3d at 941, 821 N.Y.S.2d at 427.

meritless. (See Defts' Opp. at 16). The plaintiffs in Five Borough Bicycle Club sought to enjoin

the enforcement of the City's permit scheme, including the recently amended 38 R.C.N.Y. § 19-

02, against groups of 50 or more bicyclists. In denying the plaintiffs' request for a preliminary

injunction, Judge Kaplan did not address the Parading Without a Permit statute's absence of a

mental state requirement. With respect to whether the 50-person threshold was narrowly

tailored, he held only that it "furthers a substantial government interest that would be less well

served by, for example, a 100-person threshold." 483 F.Supp.2d at 373. Thus, Five Borough

Bicycle Club in no way resolves any facial challenge to the Parading Without a Permit statute as

it existed at the time of the RNC, which is the challenge plaintiffs seek leave to add here.

Defendants argue that individual defendants will receive qualified immunity if the

Parading Without a Permit statute is eventually held to be facially invalid. (See Defts' Opp. at

15-16). Even if this may be true, the City of New York, as a municipality, will still remain liable

for having maintained the policy or practice of enforcing an unconstitutional law. See Owen v.

City of Independence, 445 U.S. 622, 638 (1980) ("there is no tradition of immunity for municipal

corporations . . . We hold, therefore, that [a] municipality may not assert the good faith of its

officers or agents as a defense to liability under § 1983"); Dunton v. Suffolk County, State of

N.Y., 729 F.2d 903, 907 (2nd Cir. 1984) (where municipal employee receives qualified immunity

for taking action pursuant to an unconstitutional policy, "the municipality may be wholly liable

because it cannot assert the good faith immunity of its employees as a defense to a section 1983

action").

## B.    As-Applied Challenge to N.Y.C. Admin. Code § 10-110

Contrary to defendants' mistaken assumption, plaintiffs' as-applied challenge to the

Parading Without a Permit statute is not based on a comparative analysis - i.e., how N.Y.C.

Admin. Code § 10-110 was applied before and after the RNC as compared to during the RNC. (Contra Defts' Opp. at 17). Rather, the as-applied challenge is specific to the circumstances existing at each RNC arrest location where the Parading Without a Permit statute was applied to people engaged in First Amendment activity. Accordingly, there is no need to engage in "discovery requir[ing] months if not years for the simple purpose of data gathering and comparison." (Defts' Opp. at 17). The facts and circumstances of each RNC arrest location have already been the focus of intensive discovery that is nearly complete.

N.Y.C. Admin. Code § 10-110 imposes a permit requirement on any "procession, parade or race" occurring "upon any street or any other public place." N.Y.C. Admin. Code § 10-110(a). The statute thus constitutes a content-neutral time, place and manner restriction on speech and expressive conduct protected by the First Amendment.[8] "[T]he government's authority to regulate speech and expressive conduct on property that has traditionally been open to the public for such activity, such as public streets . . ., is sharply circumscribed." Deegan v. City of Ithaca, 444 F.3d 135, 141 (2d Cir. 2006) (quoting Hobbs v. County of Westchester, 397 F.3d 133, 148 (2d Cir. 2005)).[9] Accordingly, any content-neutral time, place and manner restriction placed on the peaceful exercise of First Amendment rights must be narrowly tailored to serve a significant government interest and must permit ample alternative channels for expression. See Deegan, 444

---

[8]"The Supreme Court has declared that the First Amendment protects political demonstrations and protests -- activities at the heart of what the Bill of Rights was designed to safeguard." Jones v. Parmley, 465 F.3d 46, 56 (2d Cir. 2006). See Boos v. Barry, 485 U.S. 312, 318 (1988) (organized political protest is "classically political speech" which "operates at the core of the First Amendment").

[9]Public streets and parks "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983) (internal quotation marks and citation omitted).

F.3d at 142 (citing Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)); Mastrovincenzo v. City of New York, 435 F.3d 78, 98 (2d Cir. 2006) ("we apply 'intermediate scrutiny' to regulations of expressive activity that are not based on content"). A restriction is narrowly tailored if it "targets and eliminates no more than the 'evil' it seeks to remedy." Frisby v. Schultz, 487 U.S. 474, 485 (1988).

Plaintiffs assert that, at the various RNC arrest locations, defendants applied N.Y.C. Admin. Code § 10-110 in an overly broad manner such that it was not narrowly tailored to serve a significant government interest but was instead intended and served to punish and chill First Amendment activity. For instance, plaintiffs challenge the application of the statute to small groups (see footnote 7, supra). See, e.g., Barrett, 13 Misc.3d at 940, 821 N.Y.S.2d at 426 (finding the Parading Without a Permit statute unconstitutional when applied to "a small group of friends biking together"); Bezjak, 11 Misc.3d at 433 (finding Parading Without a Permit statute unconstitutional because it could be applied to "a person promenading, or two persons racing, . . . [or] a funeral procession, two or three cars displaying political posters traveling one behind the other, caravan style, or a small group of friends biking together").[10]

Plaintiffs also challenge the application of N.Y.C. Admin. Code § 10-110 as overly broad where the police barricaded off entire City blocks and charged all or most of the people trapped on the block with Parading Without a Permit without distinguishing, or being able to distinguish, people who were part of a "procession, parade or race" from people who were simply bystanders, observers or pedestrians or bicyclists on the block for reasons unrelated to any march or

---

[10]For example, MacNamara plaintiffs Wendy Stefanelli, Stacy Cotler, Noah Charney and Rachel Heinold were all arrested in groups smaller than 50 and charged with Parading Without a Permit.

11

demonstration.[11] See, e.g., Ward, 491 U.S. at 800, n.7 (the "essence of narrow tailoring" is that the regulation "focuses on the source of the evils the city seeks to eliminate . . . and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.").

Plaintiffs further challenge the application of the statute to people who were demonstrating in blocks that were closed to traffic, such as on 35th Street between 5th and 6th Avenues on August 31, 2004, since in that circumstance, the significant governmental interest of preventing disruption was diminished.[12] See, e.g., Olivieri v. Ward, 801 F.2d 602, 606 (2d Cir. 1986) ("the excuses offered for refusing to permit the fullest scope of free speech are often disguised," and therefore "a court must independently determine the rationality of the government's interest implicated and whether the restrictions are narrowly drawn to further that interest.").

Additionally, plaintiffs challenge the application of the statute where, as on Fulton Street on August 31, 2004, the police had given the demonstrators permission to march without a permit. Cf. Cox v. Louisiana, 379 U.S. 559, 571 (1965) (where "police officials . . . in effect told the demonstrators that they could meet where they did," "to sustain [plaintiffs'] later conviction for demonstrating where they told [them they] could would be to sanction an indefensible sort of entrapment by the State").

---

[11] Without limitation, this would apply to plaintiffs and putative class members arrested at the following locations: 8/27/04 on 7th Avenue between 34th & 35th Streets, 35th Street between 10th Avenue and Dyer, and 2nd Avenue between 9th and 10th Streets; 8/29/07 on 37th Street between Broadway and 7th Avenue; and 8/31/04 on Fulton Street between Church and Broadway, 16th Street between Union Square East and Irving Place, 17th Street at 5th Avenue, and 35th Street between 5th & 6th Avenues.

[12] See Plaintiff Jason Barrus 50-h Tr. at 21-22, attached as Exhibit B to Norins Reply Decl.

12

The foregoing examples illustrate, but do not exhaust, the ways in which defendants applied the Parading Without a Permit statute in an overly broad and thus unconstitutional manner during the RNC.

## C.    As-Applied Challenge to New York Penal Law §§ 240.20(5) & (6)

Plaintiffs seek to add an as-applied challenge to subsections (5) and (6) of the Disorderly Conduct statute on overbreadth grounds similar to those described above in connection with the parading statute.

### 1.    New York Penal Law § 240.20(5) - Blocking Traffic

Subsection (5) of the Disorderly Conduct statute prohibits civilians from intentionally or recklessly blocking vehicular or pedestrian traffic. See N.Y. Penal Law § 240.20(5). This statute, when applied to persons participating in a march, protest or demonstration, operates as a time, place and manner restriction on First Amendment activity, and as such, must be narrowly tailored to serve a significant government interest. See Deegan, 444 F.3d at 142.

While defendants have "a legitimate interest in regulating parades, and other large gatherings which may disrupt traffic and create the potential for disorder" Barrett, 13 Misc.3d at 937, 821 N.Y.S.2d at 424 (citing Cox v. State of New Hampshire, 312 U.S. 569, 574-576 (1941)), "in a protest context . . . the police may not interfere with demonstrations unless there is a 'clear and present danger' of riot, imminent violence, interference with traffic or other immediate threat to public safety." Jones, 465 F.3d at 57 (citing Cantwell v. Connecticut, 310 U.S. 296, 308-09 (1940)). Indeed, "the Supreme Court has long applied the 'clear and present danger' test to protest cases to determine when police interference is constitutional." Id. Therefore, "[n]either energetic, even raucous, protestors who annoy or anger audiences, nor demonstrations that slow traffic or inconvenience pedestrians, justify police stopping or

13

interrupting a public protest." Id. at 58.[13]

Accordingly, as defendants themselves recognize, police may only arrest people involved
in a demonstration or protest where their conduct "seriously interferes" with vehicular or
pedestrian traffic. (Defts' Opp. at 18). See, e.g., People v. Jones, 13 Misc.3d 94, 96, 827
N.Y.S.2d 403, 405 (N.Y.Sup.App.Term 2006) ("Mere inconvenience to pedestrians is
insufficient. There must be a claim of 'serious annoyance' or a 'threatening or abusive' manner
to pedestrians."); People v. Pearl, 66 Misc.2d 502, 502-03, 321 N.Y.S.2d 986, 987 (1st Dept.
1971) ("Something more than the temporary inconvenience caused to pedestrians by the
demonstrators' blocking of the west crosswalk, requiring them to enter the roadway to get to the
other side, was required to sustain a conviction for obstructing pedestrian traffic.").

Plaintiffs' as-applied challenge focuses on RNC arrests for blocking vehicular or
pedestrian traffic where there was no serious interference with traffic and thus no significant
government interest to be served in applying the statute. The August 31, 2004 arrests on 35th
Street between Fifth and Sixth Avenues is an example of such a situation. (See Subsection II(B),
supra at page 12). Another example would be the people on 17th Street at 5th Avenue who were
arrested while standing quietly on the sidewalk in a line, as ordered by the police, waiting for the
police to tell them how they could proceed to their destination.[14] There, the application of N.Y.
Penal Law § 240.20(5) served only as a pretext to remove demonstrators from the public streets.

---

[13]In support of this rule of law, the Circuit cites to Cox v. Louisiana, 379 U.S. 536, 546-
47, 549 n.12 (1965) (group of protestors who provoked a visceral, angered response and slowed
traffic did not jeopardize their speech rights) and to Edwards v. South Carolina, 372 U.S. 229,
232, 237 (1963)("clear and present danger" means more than annoyance, inviting dispute or
slowing traffic).

[14]See MacNamara Tr. at 195-97, 214, 216-17; Stoneback Tr. at 249-50, 271-74, 280-81,
attached as Exhibits C & D, respectively, to Norins Reply Decl .

14

Plaintiffs' as-applied challenge also focuses on arrest locations where, even if some

demonstrators may have blocked traffic, the police made no individual distinctions but instead

sealed off the block and indiscriminately arrested everyone present for impeding traffic. In such

situations, the application of N.Y. Penal Law § 240.20(5) was constitutionally over-broad

because it infringed the First Amendment rights of non-offending individuals, thereby serving to

punish and chill First Amendment activity. See, e.g., Jones, 465 F.3d at 60 ("plaintiffs had an

undeniable right to continue their peaceable protest activities, even when some in the

demonstration might have transgressed the law") (citing NAACP v. Claiborne Hardware Co.,

458 U.S. 886, 908 (1982) ("[t]he right to associate does not lose all constitutional protection

merely because some members of the group may have participated in conduct . . . that itself is not

protected."). See also Ward, 491 U.S. at 800, n.7 (the "essence of narrow tailoring" is that the

regulation "focuses on the source of the evils the city seeks to eliminate . . . and eliminates them

without at the same time banning or significantly restricting a substantial quantity of speech that

does not create the same evils.").[15]

## 2.    New York Penal Law § 240.206) - Failure to Disperse

Subsection (6) of the Disorderly Conduct statute makes it a crime to fail to obey a lawful

order to disperse. See N. Y. Penal Law § 240.20(6). In order for a dispersal order to be lawful as

applied to a protest or demonstration, there must be a "clear and present danger" of "riot,

imminent violence, interference with traffic or other immediate threat to public safety." Jones,

465 F.3d at 57. Where such clear and present danger was lacking, where only some of the

---

[15]Again, these examples of as-applied challenges to N.Y. Penal Law § 240.20(5) and the examples, infra, regarding N.Y. Penal Law § 240.20(6) are not meant to be exhaustive or to preclude plaintiffs from raising additional arguments as to how the statute was unconstitutionally applied in connection with RNC arrests.

15

individuals ordered to disperse had engaged in unlawful conduct, or where the police could not

identify which individuals at a given location had engaged in unlawful conduct, the application

of subsection (6) would be overly broad. See, e.g., Jones, 465 F.3d at 58-59 (rejecting

defendants' argument that it was reasonable for them to disperse the crowd; "there remain

questions of material fact regarding whether defendants' purported bases for dispersing the

crowd -- that some protestors had [engaged in unlawful assembly] and disorderly conduct, N.Y.

Penal Law § 240.20(5) -- actually justified their actions. . . . [A] serious issue remained as to

whether . . . the police could identify those who had entered the roadway in contravention of the

disorderly conduct statute.").

Further, even if the order to disperse is lawful, in order to arrest people in a crowd for

failing to disperse, the order must be reasonably audible to everyone in the crowd, and the crowd

must be given a reasonable opportunity to comply. See Barham v. Ramsey, 434 F.3d 565, 576

(D.C. Cir. 2006) ("[Commanding officer] could not 'deal with the crowd as a unit' unless he first

issued an order to disperse and then provided a reasonable period of time to comply with that

order."); Dellums v. Powell, 566 F.2d 167, 181 n.31 (D.C. Cir. 1977) ("notice and an opportunity

to disperse [required] before arrests of the crowd as a unit' would be constitutionally permissible.

Moreover, the 'fair notice' required . . . is notice reasonably likely to have reached all of the

crowd despite any noise the demonstrators may have been making.") (cited favorably in Jones,

465 F.3d at 60). Thus, for arrest locations where no order to disperse was given, or where the

order was not reasonably audible to all civilians at the arrest location, or where the police had

already sealed off the area and were refusing to allow people to leave when the order to disperse

was given, the application of N. Y. Penal Law § 240.20(6) was unconstitutionally broad,

amounting essentially to a pretext for arresting people engaged in First Amendment protected

16

activity.[16]

Additionally, the application of N. Y. Penal Law § 240.20(6) to people arrested on Fulton Street on August 31, 2004 was unconstitutional in light of the fact that the police had given the demonstrators permission to march, but within a few minutes of the march beginning, suddenly revoked their countenance of the demonstration and arrested them without any opportunity to disperse. See, e.g., Cox, 379 U.S. at 573 (where police explicitly permitted a civil rights demonstration to congregate on the sidewalk across from the municipal courthouse, and then minutes after the protest started, police tried to disperse the crowd and arrested those who did not comply with the order, court held that "the dispersal order did not remove the protection accorded [the demonstrators] by the original grant of permission").

**D.    Facial Challenge to Penal Law § 240.20(5) - Blocking Traffic**

The proposed amended complaint in Abdell also includes a facial challenge to Penal Law § 240.20(5). (See Third Cause of Action in Abdell's Third Amended Complaint). Section 240.20(5) allows a police officer to arrest any person who, in the judgment of the police officer, is obstructing pedestrian traffic. The statute does not require that a person be given a warning before being arrested under subsection 5. The statute does not define what is meant by "obstructing."

It is a truism of due process jurisprudence that no person may be subject to punishment on the mere whim of a police officer. A law violates "the first essential of due process," the Supreme Court held in Connally v. General Construction Co., 269 U. S. 385, 391 (1926), "which

---

[16]Allegations of such facts at various RNC arrest situations – i.e., no dispersal order given, dispersal order not reasonably audible, and/or no reasonable opportunity to comply – are plead throughout plaintiffs' current as well as proposed amended complaints. See, e.g., MacNamara Proposed Second Amended Class Action Complaint, attached as Exhibit A to Norins Decl., at ¶¶ 72(D)&(E), 73(C), (E)-(K).

17

either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning. . .."

Elaborating upon the meaning of Connally in condemning a vagrancy statue, the Court wrote in Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939):

> No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.

The vice of such unprincipled law enforcement practices was addressed by the Supreme Court in a series of "vagrancy" cases beginning with Papachristou v. City of Jacksonville, 405 U.S. 156 (1972). Jacksonville's vagrancy ordinance was unconstitutional not only because it failed to give "'a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,'" id. at 162 (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)), but "because it encourages arbitrary and erratic arrests and convictions." Id. We quote in full what the Court said about this aspect of the Jacksonville ordinance since it so graphically applies to the circumstances of so many of the arrests during the RNC:

> Where, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a convenient tool for "harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure." . . . It results in a regime in which the poor and the unpopular are permitted to "stand on a public sidewalk . . . only at the whim of any police officer."

Id. at 847-48 (citations omitted).

The vice of subsection 5 is not only in its failure to afford due process, but in its application to peaceful demonstrations such as those that occurred during the RNC. Repeatedly, the NYPD arrested persons pursuant to subsection 5 who were standing on sidewalks engaged in peaceful protest. They were given no warning that their peaceful conduct would subject them to

18

arrest.

Vagueness in a statute is of particular concern when it touches upon constitutionally protected conduct. As the Court said in Smith v. California, 361 U.S. 147, 151 (1959), "stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser." Even if subsection 5 did not violate due process, insofar as it permits the arrest of peaceful demonstrators without a warning for conduct as vague as "obstruction" of a sidewalk, it surely violates the First Amendment.

Thus, for the reasons stated above and in plaintiffs' moving papers, plaintiffs respectfully request that the Court grant leave to amend to add a facial and as-applied challenges to N.Y.C. Admin. Code § 10-110 (Parading Without a Permit) and Penal Law §§ 240.20 (5) & (6).

## CONCLUSION

The addition of Deputy Commissioner Cohen as a defendant and of the constitutional challenges to the Parading and Disorderly Conduct statutes in no way alter the fundamental issues of fact and law at play in this litigation. Those issues will be part of the fabric of the RNC cases with or without amending the pleadings. However, it is preferable to amend the complaints so as to more accurately and clearly define plaintiffs' allegations. The "presentation of the merits of the action will be subserved thereby." Fed.R.Civ.P. 15(b). Accordingly, for the reasons stated above, and in plaintiffs' moving papers, plaintiffs respectfully request that their motions for leave to file amended complaints be granted, together with such further and additional relief as the Court deems appropriate.

19

Dated:      New York, New York
            November 15, 2007

Jonathan C. Moore (JM 6902)
Clare R. Norins (CN 2821)
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiffs and Putative Class Members
in MacNamara*

Alan Levine (AL 5297)
99 Hudson Street, 14th Floor
New York, New York 10013
(212) 739-7506

*Attorney for Plaintiffs in Abdell*

20

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x

UDO DRESCHER,

                    Plaintiff,

        -versus-

THE CITY OF NEW YORK, et al.,

                    Defendants.
--------------------------------------------------------------------- x

**CASE MANAGEMENT ORDER**

05 CV 7541 (KMK)

        Pursuant to Rule 16 of the Federal Rules of Civil Procedure, the Court hereby enters its case management order. This is one of a number of cases arising from arrests and detentions by the New York City Police Department around the time of the Republican National Convention in New York City in late August and early September 2004 ("RNC Cases"). These cases involve numerous named plaintiffs and numerous defendants, including the City of New York, its Mayor and Commissioner of Police. In these cases, various alleged police practices are said to have violated plaintiffs' rights, including those guaranteed by the First and Fourth Amendments to the United States Constitution and 42 U.S.C. § 1983. Among the remedies sought in these cases are declaratory and injunctive relief, compensatory and punitive damages, attorneys' fees and costs.

        The Court is advised that the parties do not consent to trial of this case by magistrate judge. The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. All motions and applications shall be governed by the Court's Individual Practices, including pre-motion conference requirements. This order may be modified only by agreement of the parties, subject to the Court's approval, or upon a showing of good cause.

| *DATE DUE* | *PLEADINGS & DISCOVERY* |
|---|---|
| 3/1/2006 | Plaintiff and defendants shall have served their respective Rule 26 disclosures. |
| 5/31/06 | Depositions of Defendants' "Consolidated Witnesses," as set forth in the Court's Discovery Order #1, are expected to be completed. |
| 7/1/06 | All written discovery, including document requests and interrogatories, shall have been served, except as provided below. |
| 8/1/06 | All depositions of fact witnesses shall have been noticed. With respect to both fact and expert witnesses, unless the noticing party assents, depositions of particular witnesses are not to be held until the party producing the witness has responded to any outstanding interrogatories and requests for documents pertaining to that witness. Once a party has completed the deposition of a witness, that party shall not later seek to re-depose that witness absent good cause. |
| 9/1/06 | All fact discovery shall have been completed. |
| 10/1/06 | Plaintiff and defendants shall identify their expert witnesses for trial and provide the disclosures contemplated by the federal rules. |
| 11/1/06 | Depositions of plaintiff's trial experts shall be completed. |
| 12/1/06 | Depositions of defendants' trial experts shall be completed. |
| 1/1/07 | All contention interrogatories and requests to admit shall be served. |
| 2/1/07 | All responses due to contention interrogatories and requests to admit. |
| 2/15/07 | Plaintiff and defendants' counsel must meet for at least one hour to discuss settlement no later than this date. |

Plaintiff and defendants' counsel have discussed holding a settlement conference before a Magistrate Judge. The parties request a settlement conference before a Magistrate Judge.

Plaintiff and defendants' counsel have discussed the use of the Court's Mediation Program. The parties do not request that the case be referred to the Court's Mediation Program.

Plaintiff and defendants' counsel have discussed the use of a privately

2

retained mediator. The parties do not intend to use a privately retained mediator.

### *DISPOSITIVE MOTIONS*

4/1/07

All dispositive motions shall be served. Pursuant to the undersigned's Individual Practices, the parties shall request a pre-motion conference in writing at least four weeks prior to this deadline.

5/1/07

Oppositions due to all dispositive motions.

6/1/07

Replies, if any, due to all dispositive motions.

Within 30 days of the Court's ruling on dispositive motions

Should any part of the case remain after the Court's ruling on dispositive motions, a Pre-Trial Conference with the Court shall be held. Prior to that conference, the parties shall consult and submit to the Court a Joint Pretrial Order prepared in accordance with the Undersigned's Individual Practices and Rule 26(a)(3) of the Federal Rules of Civil Procedure. If this action is to be tried before a jury, proposed voir dire, jury instructions and a verdict form shall be filed with the Joint Pretrial Order. Plaintiff and defendants' counsel are required to meet and confer on the jury instructions and verdict form in an effort to make an agreed upon submission.

The parties have conferred and their present best estimate of the length of trial of plaintiff's case is approximately 2 weeks.

**SO ORDERED**

DATED:      New York, New York
            February 17, 2006

James C. Francis IV
United States Magistrate Judge

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11 9 05

------------------------------------------------------------------------ X

SARAH COBURN, et al.

                              Plaintiffs,

          -versus-

THE CITY OF NEW YORK, et al.
                              Defendants.

**CONSOLIDATED CASE
MANAGEMENT ORDER**

**ECF CASES**

05 CV 7623 (KMK) (JCF)

------------------------------------------------------------------------ X

JEFFREY PHILLIPS, et al.

                              Plaintiffs,

          -versus-

THE CITY OF NEW YORK, et al.
                              Defendants.

05 CV 7624 (KMK) (JCF)

------------------------------------------------------------------------ X

DAVID OEHL

                              Plaintiff,

          -versus-

THE CITY OF NEW YORK, et al.
                              Defendants.

05 CV 7625 (KMK) (JCF)

------------------------------------------------------------------------ X

HEIKE JARICK

                              Plaintiff,

          -versus-

THE CITY OF NEW YORK, et al.
                              Defendants.

05 CV 7626 (KMK) (JCF)

------------------------------------------------------------------------ X

SANDRA GALITZER, as Mother and Next Friend of
GWYNN GALITZER,

                              Plaintiff,

          -versus-

THE CITY OF NEW YORK, et al.
                              Defendants.

05 CV 7669 (KMK) (JCF)

------------------------------------------------------------------------ X

CHARLEE HUFFMAN and TADEUSZ MYCZEWSKI,

                              Plaintiffs,

          -versus-

THE CITY OF NEW YORK, et al.
                              Defendants.

05 CV 7671 (KMK) (JCF)

-------------------------------------------------------------------- x

NIKOLAS SIKELIANOS,

                  Plaintiff,                           05 CV 7673 (KMK) (JCF)

    -versus-

THE CITY OF NEW YORK, et al.
                    Defendants.

-------------------------------------------------------------------- x

           Pursuant to Rule 16 of the Federal Rules of Civil Procedure, the Court hereby

enters its Case Management Order governing the foregoing cases. These cases arise from arrests

and detentions by the New York City Police Department around the time of the Republican

National Convention in New York City in late August and early September 2004 ("RNC

Cases"). They involve numerous named Plaintiffs and numerous Defendants including the City

of New York, its Mayor and Commissioner of Police. Various alleged police practices are said

to have violated Plaintiffs' rights, including those guaranteed by the First and Fourth

Amendments to the United States Constitution and 42 U.S.C. § 1983.

           The parties expect that issue will be joined shortly and that all of the material

allegations of the complaints will be denied. Defendants have stipulated to the following terms

at this time to permit Plaintiffs in these actions the opportunity to participate in the consolidated

discovery expected to commence this fall in the related RNC Cases, as contemplated by the

Court's Discovery Order #1 (entered on October 3, 2005). The Court previously entered its case

management order in the RNC Case captioned *Macnamara, et al. v. The City of New York, et al.,*

*No. 04-CV-9216 (KMK).* In the interests of the convenience and economy of the parties, and the

efficient management and oversight of the Court's docket, the Court hereby enters this order, the

provisions of which are designed to be compatible with those in *Macnamara*.

           The Court is advised that the parties do not consent to trial of these cases by

magistrate judge. The parties are to conduct discovery in accordance with the Federal Rules of

Civil Procedure and the Local Rules of the Southern District of New York. All motions and

applications shall be governed by the Court's Individual Practices, including pre-motion conference requirements. This order may be modified only by agreement of the parties, subject to the Court's approval, or upon a showing of good cause.

The parties have agreed to dispense with initial disclosures. Discovery may commence immediately, prior to service of Defendants' answers. Defendants will provide to Plaintiffs' counsel forthwith all discovery thus far served in the *MacNamara* and *Schiller* cases (and any other "generic" RNC discovery in their possession) and will reasonably promptly respond to any discovery requests by Plaintiffs' counsel necessary for meaningful participation in consolidated depositions to be scheduled in the near future.

## *DATE DUE*    *PLEADINGS & DISCOVERY*

|  |  |
|---|---|
|  | The parties have agreed to dispense with initial disclosures and have commenced discovery. |
| 12/12/05 | Answers due for all Defendants. |
| 11/1/05 through 1/31/06 | As contemplated by Discovery Order #1, entered on October 3, 2005, it is expected that many of the consolidated depositions in *Schiller* and related RNC Cases shall be completed. |
| 5/1/06 | All written discovery requests, including document requests and interrogatories, shall have been served, except as provided below. |
| 6/1/06 | All depositions of fact witnesses shall have been noticed. With respect to both fact and expert witnesses, unless the noticing party assents, depositions of particular witnesses are not to be held until the party producing the witness has responded to any outstanding interrogatories and requests for documents pertaining to that witness. Once a party has completed the deposition of a witness, that party shall not later seek to re-depose that witness absent good cause. |
| 7/1/06 | All fact discovery shall have been completed. |
| 8/1/06 | Plaintiffs shall identify their expert witnesses for trial and provide the disclosures contemplated by the federal rules. |
| 9/1/06 | Depositions of plaintiffs' trial experts shall be completed. |

3

| | |
|---|---|
| 10/1/06 | Defendants shall identify their expert witnesses for trial and provide the disclosures contemplated by the federal rules. |
| 11/1/06 | Depositions of defendants' trial experts shall be completed. |
| 12/1/06 | All contention interrogatories and requests to admit shall be served. |
| 1/1/07 | All responses due to contention interrogatories and requests to admit. |
| 1/15/07 | All counsel must meet for at least one hour to discuss settlement no later than this date. |

Counsel for the parties have discussed holding a settlement conference before a Magistrate Judge. The parties request a settlement conference before a Magistrate Judge.

Counsel for the parties have discussed the use of the Court's Mediation Program. The parties do not request that the case be referred to the Court's Mediation Program.

Counsel for the parties have discussed the use of a privately retained mediator. The parties do not intend to use a privately retained mediator.

### *DISPOSITIVE MOTIONS*

| | |
|---|---|
| 3/1/07 | All dispositive motions shall be served in *Coburn*. Oppositions due to all dispositive motions by 4/1/07. Replies due to all dispositive motions by 5/1/07. Pursuant to Judge Karas' Individual Practices, the parties shall request a pre-motion conference in writing at least four weeks prior to this deadline. |
| 3/15/07 | All dispositive motions shall be served in *Phillips*. Oppositions due to all dispositive motions by 4/15/07. Replies due to all dispositive motions by 5/15/07. Pursuant to Judge Karas' Individual Practices, the parties shall request a pre-motion conference in writing at least four weeks prior to this deadline. |
| 4/1/07 | All dispositive motions shall be served in *Oehl*. Oppositions due to all dispositive motions by 5/1/07. Replies due to all dispositive motions by 6/1/07. Pursuant to Judge Karas' Individual Practices, the parties shall request a pre-motion conference in writing at least four weeks prior to this deadline. |
| 4/15/07 | All dispositive motions shall be served in *Jarick*. Oppositions due to all dispositive motions by 5/15/07. Replies due to all dispositive motions by 6/15/07. Pursuant to Judge Karas' Individual Practices, the parties shall request a pre-motion conference in writing at least four weeks prior |

4

to this deadline.

5/1/07

All dispositive motions shall be served in *Galitzer*. Oppositions due to all dispositive motions by 6/1/07. Replies due to all dispositive motions by 7/1/07. Pursuant to Judge Karas' Individual Practices, the parties shall request a pre-motion conference in writing at least four weeks prior to this deadline.

5/15/07

All dispositive motions shall be served in *Huffman*. Oppositions due to all dispositive motions by 6/15/07. Replies due to all dispositive motions by 7/15/07. Pursuant to Judge Karas' Individual Practices, the parties shall request a pre-motion conference in writing at least four weeks prior to this deadline.

6/1/07

All dispositive motions shall be served in *Sikelianos*. Oppositions due to all dispositive motions by 7/1/07. Replies due to all dispositive motions by 8/1/07. Pursuant to Judge Karas' Individual Practices, the parties shall request a pre-motion conference in writing at least four weeks prior to this deadline.

Within 30 days of the Court's ruling on dispositive motions

Should any part of the case remain after the Court's ruling on dispositive motions, a Pre-Trial Conference with the Court shall be held. Prior to that conference, the parties shall consult and submit to the Court a Joint Pretrial Order prepared in accordance with the Undersigned's Individual Practices and Rule 26(a)(3) of the Federal Rules of Civil Procedure. If this action is to be tried before a jury, proposed voir dire, jury instructions and a verdict form shall be filed with the Joint Pretrial Order. Counsel are required to meet and confer on the jury instructions and verdict form in an effort to make an agreed upon submission.

The parties have conferred and their present best estimate of the length of trial of each case is approximately 2 to 3 weeks.

**SO ORDERED**

DATED:     New York, New York
          ~~October~~  **9**, 2005
          *Nov.*

James C. Francis IV
United States Magistrate Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11\9\05
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

BETTY BASTIDAS, et al.

                   Plaintiffs,

     -versus-

THE CITY OF NEW YORK, et al.
                  Defendants.

------------------------------------------------------------------------ x

EMILY SLOAN, et al.

                   Plaintiffs,

     -versus-

THE CITY OF NEW YORK, et al.
                  Defendants.

------------------------------------------------------------------------ x

**CONSOLIDATED CASE
MANAGEMENT ORDER**

**ECF CASES**

05 CV 7670 (KMK) (JCF)

05 CV 7668 (KMK) (JCF)

        Pursuant to Rule 16 of the Federal Rules of Civil Procedure, the Court hereby
enters its Case Management Order governing the foregoing cases. These cases arise from arrests
and detentions by the New York City Police Department around the time of the Republican
National Convention in New York City in late August and early September 2004 ("RNC
Cases"). They involve numerous named Plaintiffs and numerous Defendants including the City
of New York, its Mayor and Commissioner of Police. Various alleged police practices are said
to have violated Plaintiffs' rights, including those guaranteed by the First and Fourth
Amendments to the United States Constitution and 42 U.S.C. § 1983.

        The parties expect that issue will be joined shortly and that all of the material
allegations of the complaints will be denied. Defendants have stipulated to the following terms
at this time to permit Plaintiffs in these actions the opportunity to participate in the consolidated
discovery expected to commence this fall in the related RNC Cases, as contemplated by the
Court's Discovery Order #1 (entered on October 3, 2005). The Court previously entered its case

management order in the RNC Case captioned *Macnamara, et al. v. The City of New York, et al., No. 04-CV-9216 (KMK)*. In the interests of the convenience and economy of the parties, and the efficient management and oversight of the Court's docket, the Court hereby enters this order, the provisions of which are designed to be compatible with those in *Macnamara*.

The Court is advised that the parties do not consent to trial of these cases by magistrate judge. The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. All motions and applications shall be governed by the Court's Individual Practices, including pre-motion conference requirements. This order may be modified only by agreement of the parties, subject to the Court's approval, or upon a showing of good cause.

The parties have agreed to dispense with initial disclosures. Discovery may commence immediately, prior to service of Defendants' answers. Defendants will provide to Plaintiffs' counsel forthwith all discovery thus far served in the *MacNamara* and *Schiller* cases (and any other "generic" RNC discovery in their possession) and will reasonably promptly respond to any discovery requests by Plaintiffs' counsel necessary for meaningful participation in consolidated depositions to be scheduled in the near future.

## *DATE DUE*          *PLEADINGS & DISCOVERY*

The parties have agreed to dispense with initial disclosures and have commenced discovery.

12/12/05          Answers due for all Defendants.

11/1/05 through   As contemplated by Discovery Order #1, entered on October 3, 2005, it
1/31/06           is expected that many of the consolidated depositions in *Schiller* and
                  related RNC Cases shall be completed.

5/1/06            All written discovery requests, including document requests and
                  interrogatories, shall have been served, except as provided below.

2

| | |
|---|---|
| 6/1/06 | All depositions of fact witnesses shall have been noticed. With respect to both fact and expert witnesses, unless the noticing party assents, depositions of particular witnesses are not to be held until the party producing the witness has responded to any outstanding interrogatories and requests for documents pertaining to that witness. Once a party has completed the deposition of a witness, that party shall not later seek to re-depose that witness absent good cause. |
| 7/1/06 | All fact discovery shall have been completed. |
| 8/1/06 | Plaintiffs shall identify their expert witnesses for trial and provide the disclosures contemplated by the federal rules. |
| 9/1/06 | Depositions of plaintiffs' trial experts shall be completed. |
| 10/1/06 | Defendants shall identify their expert witnesses for trial and provide the disclosures contemplated by the federal rules. |
| 11/1/06 | Depositions of defendants' trial experts shall be completed. |
| 12/1/06 | All contention interrogatories and requests to admit shall be served. |
| 1/1/07 | All responses due to contention interrogatories and requests to admit. |
| 1/15/07 | All counsel must meet for at least one hour to discuss settlement no later than this date. |

Counsel for the parties have discussed holding a settlement conference before a Magistrate Judge. The parties request a settlement conference before a Magistrate Judge.

Counsel for the parties have discussed the use of the Court's Mediation Program. The parties do not request that the case be referred to the Court's Mediation Program.

Counsel for the parties have discussed the use of a privately retained mediator. The parties do not intend to use a privately retained mediator.

### *DISPOSITIVE MOTIONS*

| | |
|---|---|
| 2/1/07 | All dispositive motions shall be served in *Bastidas*. Oppositions due to all dispositive motions by 3/1/07. Replies due to all dispositive motions by 4/1/07. Pursuant to Judge Karas' Individual Practices, the parties shall request a pre-motion conference in writing at least four weeks prior to this deadline. |

3

2/15/07                All dispositive motions shall be served in *Sloan*. Oppositions due to all
                       dispositive motions by 3/15/07. Replies due to all dispositive motions
                       by 4/15/07. Pursuant to Judge Karas' Individual Practices, the parties
                       shall request a pre-motion conference in writing at least four weeks prior
                       to this deadline.

Within 30 days of the   Should any part of the case remain after the Court's ruling on dispositive
Court's ruling on       motions, a Pre-Trial Conference with the Court shall be held. Prior to
dispositive motions     that conference, the parties shall consult and submit to the Court a Joint
                        Pretrial Order prepared in accordance with the Undersigned's Individual
                        Practices and Rule 26(a)(3) of the Federal Rules of Civil Procedure. If
                        this action is to be tried before a jury, proposed voir dire, jury
                        instructions and a verdict form shall be filed with the Joint Pretrial
                        Order. Counsel are required to meet and confer on the jury instructions
                        and verdict form in an effort to make an agreed upon submission.

                        The parties have conferred and their present best estimate of the length
                        of trial of each case is approximately 2 to 3 weeks.

## SO ORDERED

DATED:     New York, New York
           October 9, 2005
           Nov.

                                                James C. Francis IV
                                                United States Magistrate Judge

4

# EXHIBIT C



MICHAEL A. CARDOZO
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

Gerald S. Smith
*Senior Counsel*
gsmith@law.nyc.gov
Tel: (212) 513-7927
Fax: (212) 788-9776

March 7, 2008

### *BY FACSIMILE*

The Honorable James C. Francis IV
United States Magistrate Judge
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl Street - Room 1960
New York, New York 10007-1312

> *Re:*        *Consolidated RNC Cases*

Dear Judge Francis:

Defendants write in support of their request that Plaintiffs identify which non-party witnesses they are likely to call at trial or in support of a motion for summary judgment so that Defendants may depose those witnesses. Defendants raised this issue with this Court in a letter dated February 13, 2008 as well as during the February 15, 2008 Status Conference. Plaintiffs have opposed this application, claiming that it is untimely and that prior Court Orders have foreclosed this phase of discovery.[1]

Defendants' application should be granted for several reasons. First, Defendants have complied with this Court's Order governing non-party witnesses and noticed those depositions in a timely manner. The instant request is simply an attempt to narrow the number of those depositions which Defendants will actually have to take. Second, Plaintiffs cannot demonstrate any undue prejudice as a result of this request, as discovery is continuing along several tracks in this litigation and Defendants' application will not alter the current discovery schedule in a significant way. On the other hand, Defendants will be unfairly prejudiced if this application is denied.

---

[1]        The following counsel filed oppositions: Jonathan Moore (dated February 27, 2008); Robert Finkelstein (dated February 27, 2008); Rose Webber (dated February 28, 2008), and James Meyerson (dated February 28, 2008). Defendants address those oppositions collectively herein.

## I. **Defendants Noticed All Non-Party Depositions In A Timely Manner**

Plaintiffs claim that Defendants' request is untimely because the time period in which Defendants should have noticed the non-party witnesses that are the subject of Defendants' application has already closed. In support of this claim, Plaintiffs rely upon Orders dated June 15, 2007 and November 26, 2007. There are two significant flaws with Plaintiffs' argument. First, the June 15, 2007 order did not govern non-party depositions. Second, Defendants did comply with the November 26, 2007 Order and did notice all non-party depositions at issue in a timely manner.

### The June 15, 2007 Order

In at least one of the Letters to this Court as well as at the February 15, 2008 Status Conference, several of Plaintiffs' counsel expressed the opinion that this Court's June 15, 2007 Order ("the June Order") governed both party and non-party witness depositions, and that all non-party depositions should have been taken according to the schedule prescribed by that Order. (See e.g., Letter from R. Finkelstein dated February 27, 2008 at pp. 3-4). This is simply not true. To the extent that there was any question as to whether the June Order governed non-party witnesses, Plaintiffs' Counsel in the *MacNamara* case addressed this issue during a status conference on June 29, 2007. During that conference, Counsel raised the issue of several non-party witnesses who had not been included in the original witness list submitted to the Court. In response, this Court stated that it had "not been concerned" with non-party depositions in the June Order.[2] Thus, the June Order did not govern non-party witnesses and Plaintiffs' attempt to now say that it did is misleading and incorrect.

### The November 26, 2007 Order

Plaintiffs also cite to this Court's order dated November 26, 2007 ("the November Order") in support of their claim that Defendants' application is untimely. Specifically, Plaintiffs claim that Defendants should have noticed all non-party depositions by the deadline set forth in this order but failed to do so. This argument is similarly incorrect. Defendants did notice the depositions of all non-party witnesses according to the deadline set forth in that order.

The November Order required the parties to "notice" non-party depositions by January 15, 2008. Defendants requested and received a one week extension until January 22, 2008. On January 22, 2008, Defendants timely provided Plaintiffs' counsel via email with "notice" of the depositions of non-parties as required by the November Order. This included non-parties identified both during depositions as well as in interrogatory and other discovery responses which totaled approximately 700 non-parties.[3] In these emails, Defendants reserved their right to depose any of those individuals, thereby notifying Plaintiffs' of Defendants' intent to depose those witnesses. In those emails Defendants also asked that, to avoid wasting enormous

---

[2] See Transcript of June 29, 2007 Conference at pp. 19-20:20-25, 1 attached at Exhibit A.

[3] It should be noted that while Plaintiffs' counsel have taken the position that all non-party witnesses should have been noticed pursuant to the November Order, the Order itself only references non-party witnesses "identified as a result of party depositions" (see November Order at Paragraph 2). Regardless, Defendants noticed all non-party witnesses pursuant to the deadline set forth in this Order.

resources of all involved, Plaintiffs identify for Defendants those individuals whom Plaintiffs were likely to call at trial or in support of summary judgment. (Copies of the emails sent to Plaintiffs' counsel on January 22, 2008 are attached at Exhibit B). Plaintiffs' argument, then, that Defendants ignored the November Order is incorrect and should be disregarded.

Finally, while the Court raised the issue at the February 15, 2008 Status Conference that the close of fact discovery is governed by the Case Management Orders (the "CMOs") in these cases, none of Plaintiffs' counsel raised this argument in their oppositions. This is for the obvious reason that all parties have engaged in full-blown discovery well beyond the dates set forth in the CMOs. If there is going to be a definitive close to fact discovery, Defendants believe that they are entitled to sufficient advance notice of that deadline.

## II.    Defendants' Application Is Reasonable And Should Be Granted

To the extent Plaintiffs argue that Defendants should have been taking approximately 700 non-party depositions at the same time that they were taking approximately 500 plaintiff depositions as well as defending approximately 300 depositions of defense witnesses, this argument is unreasonable.

As the Court is aware, for the better part of 2007 Defendants were commonly engaged in over 5 depositions a day. This was many more than any single Plaintiffs' Counsel was ever involved in on a given day. Plaintiffs' suggestion that Defendants should have deposed an additional 700 individuals during that time is unreasonable based on the sheer number of depositions and resources that would have been involved. Moreover, it would have made no sense to depose these approximately 700 non-parties identified by Plaintiffs without at least having the opportunity to first ask Plaintiffs what information Plaintiffs believed these non-parties may possess. Thus, the timing of Defendants' request is supported by the prior scope and chronology of depositions occurring to date.

In support of their claim that Defendants should have been taking non-party depositions at the same time as party depositions, Plaintiffs point to the fact that they deposed non-party NYPD witnesses while also deposing party NYPD witnesses. Plaintiffs also claim that they should not be required to comply with Defendants' request to narrow their witness lists because Defendants have never extended them "the same courtesy." (See Letter from Jonathan Moore dated February 27, 2008 at p. 2). Both of these arguments are misleading and should be rejected.

First, with regard to the fact that Plaintiffs deposed non-party NYPD witnesses while deposing party NYPD witnesses, Plaintiffs requested that Defendants identify those witnesses with personal knowledge of the circumstances of a particular plaintiff's arrest. In response to this request, Defendants identified Plaintiffs' arresting officers as well as other employees of the NYPD who were present at a particular arrest location and had knowledge of the circumstances of those arrests. While a percentage of these individuals are technically non-parties in these litigations, they are all employees of the NYPD. Moreover, while Plaintiffs took those NYPD employees' depositions (many of whom they subsequently named as Defendants), Defendants were taking substantially more depositions during the same timer period, i.e. approximately 500 Plaintiffs. Thus, Plaintiffs' implication that they were more diligent is simply wrong.

3

Second, Plaintiffs' claim that Defendants never extended them "the same courtesy" as Defendants now seek, is also misleading. To the extent Plaintiffs have been concerned with persons with knowledge identified by Defendants, Plaintiffs' concerns have had more to do with the parties' dispute over the definition of the term "personal knowledge" than they have had with conserving resources. Plaintiffs have repeatedly attempted, most notably in the form of requests to admit, to eliminate the names of officers whom they do not believe had "personal knowledge" of Plaintiffs' arrests. The term "personal knowledge," however, is a core question in these litigations and will be an element in the parties' arguments as to whether probable cause existed to arrest the Plaintiffs. Therefore, Plaintiffs' alleged attempts to "narrow" the number of persons with knowledge identified by Defendants, has not been for purposes of efficiency but rather to gain admissions on the part of Defendants that can then be used in support of summary judgment or at trial. Defendants' application, on the other hand, is a reasonable request meant to conserve resources and is one which this Court has already granted to Plaintiffs' counsel in the *Dinler* and *Schiller* cases. As such, the Court should now grant the same request to Defendants.

## III.    Defendants Will Be Unfairly Prejudiced If Their Application Is Denied

Even if this Court believes that the Orders cited above did provide cut-off dates for the depositions Defendants now seek, Defendants' application should be granted because the prejudice to Plaintiffs is minimal when compared to the undue prejudice that Defendants would face if the application is denied.

Plaintiffs cannot demonstrate any prejudice if this Court grants Defendants' application. If the Court grants Defendants' application, the only result will be that Defendants will depose those non-parties whom Plaintiffs believe they will likely call at trial or in support of summary judgment. These depositions themselves will not cause any undue prejudice towards Plaintiffs because discovery in these litigations is still proceeding on several tracks. For example, Plaintiffs intend to recall several witnesses for additional questioning on issues for which Defendants had asserted the deliberative process privilege. As a result of recent orders due to failures to provide discovery, a number of Plaintiffs are also going to be recalled as well. The numbers of those depositions may increase as a result of the January 22, 2008 Motions. In addition, discovery concerning intelligence is still ongoing, as are plaintiff and defendant and other non-party depositions.[4] Finally, the parties have yet to commence expert discovery in any of these cases, including the depositions of medical providers.

While Plaintiffs will not be unduly prejudiced or delayed if Defendants' application is granted, Defendants would assuredly be prejudiced if it is denied. Plaintiffs have reserved their rights to call any one of the over 700 non-parties identified by Plaintiffs at trial or in support of summary judgment. Since Defendants will not have had deposed any of those individuals, Defendants will be faced with being surprised by these witnesses and their testimony at both summary judgment and trial. Civil trials are not intended to be ones of surprise and Defendants should have the opportunity to depose non-parties upon whom Plaintiffs intend to rely.

---

[4]    Since January 22, 2008, Defendants have produced at least 5 witnesses for deposition , while Plaintiffs have noticed approximately 30 additional witnesses for deposition.

## IV.    Conclusion

For all of the above reasons, Defendants respectfully request that this Court grant Defendants' application.

Respectfully submitted,

Gerald S. Smith

cc:    RNC Counsel (by email distribution list)

5